364 So.2d 928 (1978)
FLOWERS, INC.
v.
Mrs. Lucy Reid RAUSCH, Clerk of Court, Parish of St. Tammany and Collector of Revenue, State of Louisiana.
No. 61833.
Supreme Court of Louisiana.
November 13, 1978.
Attorneys for the Secretary of the Dept. of Revenue and Taxation, State of Louisiana, *929 Edwin M. Callaway and W. Steven Mannear, Baton Rouge, for defendant-applicant.
Barranger, Barranger, Jones & Fussell, William J. Jones, Jr., Covington, Anderson, Leithead, Scott, Boudreau & Savoy, Randall E. Roach, Lake Charles, for plaintiff-respondent.
CALOGERO, Justice.
In this litigation plaintiff, Flowers, Inc., succeeded in the district court and Court of Appeal in having tax assessments, filed in the mortgage records of St. Tammany Parish, ordered cancelled and erased insofar as they affected certain immovable property which plaintiff had purchased from the state's tax debtor, Tan Ho Land and Cattle Company, Inc. The facts are more fully set forth in the opinion of the Court of Appeal. Flowers, Inc. v. Rausch, 354 So.2d 641 (La. App. 1st Cir. 1977). Plaintiff acquired the property from the Tan Ho Corporation less than ten years after the state had recorded its tax assessments (for corporate income and franchise taxes). After ten years from recordation, during which the assessments had not been reinscribed by the state, plaintiff filed this suit to mandamus cancellation and erasure.
The Court of Appeal affirmed a trial court judgment favorable to the plaintiff in an opinion which relied in part upon its interpretation of identical provisions in the 1921 and 1974 Louisiana constitutions which bar the running of prescription against the state in civil matters. The Court of Appeal determined that "prescription" did not encompass peremption. It was this constitutional interpretation which prompted our granting this writ. Flowers, Inc. v. Rausch, 356 So.2d 1006 (La.1978).
Plaintiff had contended, and the Court of Appeal agreed, that a tax assessment is the equivalent of a money judgment, the recordation of which is subject to the peremption period of ten years provided in C.C. art. 3369, and that such peremption runs against the state notwithstanding that both Article XII, § 13, Louisiana Constitution of 1974, and Article XIX, § 16, Louisiana Constitution of 1921, provide:
"Prescription shall not run against the state in any civil matter, unless otherwise provided in this constitution or expressly by law."
In this litigation we must decide whether and to what extent the effect upon third parties of recordation of the tax assessment continues after ten years have elapsed without timely reinscription.
We proceed here to discuss pertinent provisions of the civil code and revised statutes which bear upon our resolution of the issues in this case.
R.S. 47:1581 provides:
"Any tax, penalty, interest, or other charges duly assessed under this Sub-title, being the equivalent of a judgment, shall not be subject to the running of any prescription other than such prescription as would run against a judgment in favor of the State of Louisiana in accordance with the Constitution and laws of this state; and the recordation of such assessment shall have the same effect as the recordation of a judgment." (Emphasis supplied)
Thus, under the law tax assessments are equivalent to judgments. Judgments, including money judgments, give rise to judicial mortgages in favor of the person obtaining them, La.Civ.Code art. 3321; the judicial mortgage takes effect when recorded as the law requires. La.Civ.Code art. 3322.
Judicial mortgages are allowed to prejudice third parties only when they are recorded. La.Civ.Code art. 3342. No mortgage, judicial or otherwise, shall affect third parties unless recorded in the parish where the property to be affected is situated. La.Civ.Code art. 3347. Article 3369 says that the effect of the registry of mortgages ceases in all cases ". . . if the inscriptions have not been renewed within. . . [ten years]."
Furthermore, Article XIX, § 19, Louisiana Constitution of 1921, which is now a statute under the 1974 constitution, provides that "[n]o mortgage . . . on *930 immovable property . . . shall affect third persons unless recorded or registered in the parish where the property is situated, in the manner and within the time prescribed by law. . . . ." Excepted from the rule stated are tax mortgages, which affect third parties even absent proper recordation and registry, ". . . provided such [unrecorded] tax . . . mortgages. . . shall lapse in three years from the 31st day of December in the year in which the taxes are due . . . ."
A fair reading of the foregoing provisions establishes that tax assessments are judgments, recordation of which has the same effect as recordation of other judgments insofar as third parties are concerned. Thus, the encumbrances which result from the recordation cease to have effect if there is no timely reinscription within ten years in accordance with La.Civ. Code art. 3369.
These legal principles find ample support in the jurisprudence. In Pichot v. Recorder of Mortgages, 2 McGloin 68 (La.App.1884), the owner of land encumbered as a result of an inscription for taxes for the year 1871 sought a writ of mandamus to compel erasure of the inscription. The tax had been recorded in January, 1873 and the erasure was sought by suit filed in March, 1883. Resisting the plaintiff's claim of ten years' prescription, the state argued that prescription does not run against the sovereign. The code provisions relating to the necessity for recordation of mortgages intended to affect third parties are set forth in the Pichot opinion, and the pertinent portions of C.C. art. 3369, providing that the effect of registry ceases upon failure to timely reinscribe, are quoted. The Pichot court, in determining the applicability of art. 3369, stated:
"We have not in any manner touched upon the question of prescription as against the State. The lapsing of a mortgage for failure to reinscribe, is not, strictly speaking, a matter or question of prescription. The mortgage is not necessarily a part of the debt; it is only an accessory right. The personal obligation may stand, though the mortgage perish. The plaintiff in this case is a third person, and it does not result at all from our decision that the State has no further recourse against the original debtor. In other words, we are not called upon to decree prescription against this debt or forced contribution, whatever it may be. We simply hold, that to maintain the necessary right of mortgage, certain formalities were necessary, and that these not having been complied with, the accessory right is perempted."
So the result reached by the Court of Appeal in the case before us was in keeping with legal principles set forth in the Code and the statutes which dictate that insofar as encumbrances against real property owned by third parties are concerned, tax assessments lose their effect if not reinscribed within ten years.
The more significant question is whether the constitutional provision barring prescription against the State in civil matters precludes the granting of the relief sought here by plaintiff. The Court of Appeal found that Flowers is entitled to cancellation and erasure since only prescription, not peremption, is barred by the constitution. The Court of Appeal detailed the differences between peremption and prescription, in one instance quoting the following from Succession of Pizzillo, 223 La. 328, 65 So.2d 783 (1953):
"The difference between prescription and peremption is that the former simply bars the remedy whereas, in the latter, time is made of essence of the right granted and a lapse of the statutory period operates as a complete extinguishment of the right. [Citations omitted.] Peremption admits of no interruption or suspension; performance of the required act must be accomplished within the specified time or else the right of action no longer exists."
However, in Gilmore v. State, 79 So.2d 192 (La.App. 3rd Cir. 1955) the court, in discussing prescription in connection with a workmen's compensation claim, inferred that there was little significant distinction. That court stated:

*931 "We feel that the constitutional permission to waive `any prescription' provided by Article 3, Section 35, authorizes waiver by the Legislature of any time limitation within which suit may be filed against the State, whether referred to as peremption or as prescription or (as with compensation suits) indiscriminately as either. The limitation of one year for tort and wrongful death actions under Article 2315, LSA-Civil Code, is also technically for some purposes termed one of `peremption', and such tort suits can never be instituted against the State without special legislative authorization; if the legislature could not waive `peremption', those injured at certain periods between the biennial sessions of the legislature could receive subsequent authorization to sue only for a perempted right. The constitutional intent is plan to authorize the legislature to waive all limitations (prescriptions) of time barring suit."
There is indeed a difference between prescription and peremption as noted by the Court of Appeal and as pointed out in the Succession of Pizzillo, supra. Nevertheless we conclude that peremption is but a form of prescription, a species thereof, but with the characteristic that it does not admit of interruption or suspension,[1] and we determine that the constitutional provision barring prescription bars prescription in all its forms, including peremption.
There is of course the argument that the drafters of our 1921 and 1974 Constitutions were aware of the repeated jurisprudential treatment of prescription and peremption as different and distinct theories of waiver, and that had they intended to bar the running of peremption against the state they would have distinctly said so. We reject that argument. Our conclusion is that peremption, but a form of prescription, does "not run against the state in any civil matter, unless otherwise provided in the constitution or expressly by law." La.Const. art. XII, § 13 (1974); La.Const. art. XIX, § 16 (1921).
Nonetheless we reach the same result as did the Court of Appeal, for the reason that the running of peremption (prescription) against the State in this civil matter is "otherwise provided . . .expressly by law."
Our review and analysis hereinabove of the Code and statutory provisions indicates that the law does expressly provide, in *932 connection with tax assessments (judgments) and civil litigation relative thereto, a peremption against the State (in the event of non-reinscription in ten years) of the effect of recordation against third parties. In fact, the law expressly provides for cancellation of mortgages not timely reinscribed and cancellation in the case of encumbrances in favor of the State, as well as others, where the encumbrances ". . . have become unenforceable or shall have prescribed or perempted or the effect of which shall have ceased, because of lapse of time." R.S. 9:5161-62.[2]
Before concluding our consideration of Code and statutory provisions related to the issues before us for resolution, we must examine the provisions of R.S. 9:5685 in effect at all time pertinent to this case, enacted by Act 386 of 1974, which added a new statute to our law.[3] The State forcefully argues that those provisions, applicable to this case and setting forth a ten year prescriptive period for recordations of all judgments in favor of the state against individuals in the amount of $1,000 or less, clearly exhibit that reinscription is unnecessary to preserve the State's tax encumbrances in excess of $1,000. The State asserts that this legislation implies an intent that tax encumbrances over $1,000 shall neither prescribe nor perempt.
We find the argument without merit. The statute's effect is to cause to be prescribed by the lapse of ten years from recordation or rendition of judgment the tax claim of the state against the tax debtor, if the claim is under $1,000. The negative implication is simply that under similar circumstances the tax claim of the state against its tax debtor where the claim is over $1,000 does not prescribe. That the statute effective between 1974 and 1977 spoke of prescription of "the recordation of all judgments" (Act 311 of 1977 deleted reference to recordation of judgments and alludes now to "all judgments in favor of the state against all persons") is of no moment, for its effect is simply to treat of the judgment and its recordation's efficacy "against individuals", i. e., against tax debtors of the state. The fact that this 1974 *933 statute was meant to apply only to the lapsing of tax assessments of under $1,000 after ten years from the date of recordation or rendition of the "judgment" is evidenced by the legislature's swift amendment of its provisions.
Were it the purpose or intent of this statute to counter the requirement that tax assessments (judicial mortgages) be reinscribed in ten years in order to perpetuate their effect against the property of third party acquirers, it would surely have employed language, negating the necessity for reinscription in terms as distinct and as certain as those used by the legislature in R.S. 9:5162 in speaking of "encumbrances affecting property" becoming unenforceable, prescribing or perempting or ceasing to have effect.[4] This statute simply does not say, in anything which approaches express terms, that recordation and all of its attendant effects, even against third parties who own affected property, shall not prescribe or perempt even after the lapse of ten years and absent reinscription. It strains credulity to say that this lone statute (prior to its 1977 amendment) in its short-lived existence could by mere negative implication totally obliterate the long-standing and firmly entrenched express exception from the constitutional bar against prescription of encumbrances in the state's favor which exists when the encumbered property is owned by third parties and the state has failed to timely reinscribe.
One of the major provisions upon which we based our determination that prescription (peremption) in these circumstances is expressly provided by law is La.Const. art. XIX, § 19 (1921) (the pertinent provisions of which are quoted near the outset of the text of this opinion), continued by the 1974 constitution as a statute.[5] This continuation became effective December 31, 1974 at midnight and is therefore a more recent statute.[6] Without deciding whether La. Const, art. XIX, § 19 (1921) has by implication repealed R.S. 9:5685 as enacted by Act 386 of 1974, in the applicable respect, we do determine that its continued existence, coupled with the other statutory and Code provisions which together establish an express exception to the constitutional bar (La. Const. art. XII, § 13 [1974]), minimally suggests that R.S. 9:5685 does not have the effect for which the state contends.
We believe that public policy considerations as well as positive statutory and Code provisions support the conclusion we reach here. In Shepherd v. Orleans Cotton Press Company, 2 La.Ann. 100 (1847) the Court alluded to the chaos which existed prior to the requirement of recordation of mortgages and noted that as early as the adoption of the Code of 1808 there was established in New Orleans a recording office where all conventional and judicial mortgages were to be inscribed before they could affect third persons. The opinion then referred to Article 3333 of the Code of 1825, which provided for registry and dictated that the effect of mortgages ceased if there was not timely reinscription. Shepherd states that "[r]egistry laws, provided they are known and certain, can work no injury." Shepherd observes that inscription is exclusively in the power of the party having an interest to make it. "If he does not reinscribe, he cannot complain of losses sustained through his own neglect." 2 La.Ann. 113.
Article 3333 of the Code of 1825 was the source provision of the present code article *934 3369, which provides for timely reinscription and decrees that the effect of registry ceases in all cases where there has been no timely renewal of inscriptions. Were it to be determined that art. 3369 is inapplicable in this case "disruption to the settled law and jurisprudence affecting title transfers in this state," to which the Court of Appeal alluded, would surely result.
We further believe that the Court of Appeal was correct when it asserted that if art. 3369 is not applicable, a tax assessment, once recorded, would forever attach to property the tax debtor owned then or in the future, regardless of the length of years transpiring, necessitating a mortgage record search dating back to acquisition from the sovereign. In fact, this would not only be true with respect to any given present vendor, but would be equally true with respect to all prior vendors appearing in the chain of title.

Decree
Having determined that under the circumstances present in the instant case the loss of effect of registry against property of a third party (plaintiff Flowers) is expressly provided by law, so as to remove this peremption (prescription) from La.Const. art. XII, § 13's ban on the running of prescription against the state in civil matters, we affirm the judgment of the Court of Appeal in favor of plaintiff.
JUDGMENT AFFIRMED.
NOTES
[1] Actually, peremption is a common law term which has crept into our jurisprudence. Its counterpart in the civil law is really "forfeiture". That forfeiture is merely a form of prescription is explained in 28 G. Baudry-Lacantinerie & A. Tissier, Traite Theorique et Pratique de Droit Civil §§ 38-39 (La.St.L.Inst. trans. 1972) as follows:

"This doctrine, [one which seeks to distinguish a forfeiture, resulting from a statutory extinctive condition affecting the right itself, from prescription] and the classification based on it seem incorrect to us. In the first place, liberative prescription does not extinguish only the remedy. It acts also on the right. On this basis it is impossible to distinguish prescription and forfeiture. Secondly, we fail to see any great difference between the rules which limit specifically the term for bringing an action for annulment of marriage or rescission of a sale, and the rules in Art. 1304 which limit to ten years a series of actions for annulment or rescission. We do not understand how Arts. 809 and 880, where the articles speak expressly of prescription, can be read as providing only forfeitures. Finally, we do not think it correct to say that in all those cases there is no element of negligence causing the loss of the right. Just as in the case of an ordinary prescription, the article has in these cases the purpose of preventing certain actions from being brought after a certain lapse of time. Thus the statute aims at the negligence of those who have not acted in time, in accordance with the provisions of the law. In our opinion, wherever the civil code, the commercial code, or specific statutes impose a time limit on the exercise of a court action, it represents a prescription. Merlin's doctrine seems correct to us. Even in the case of Art. 340, where the statute uses the term `forfeiture,' it seems to us that a true prescription is involved.
. . . In effect, the doctrinal distinction between forfeitures and prescriptions is without practical significance. We do not claim that all rules governing prescription apply without distinction to what the other writers call forfeitures. However, it is not necessary to explain special rules by using the term forfeiture, instead of prescription. It suffices to say that these are special types of prescriptions."
[2] R.S. 9:5161 and 9:5162 provide:

5161. Cancellation for failure to reinscribe On the simple written application of the property owner, creditor of the owner, or other party interested, the recorder of mortgages, or person acting as such, shall cancel in full from the records of his office all inscriptions of mortgages affecting the property which have not been reinscribed within the period of time specified by Civil Code Article 3369. This Section shall not apply to those mortgages, the reinscription of which is dispensed with by special laws, nor to those mortgages in favor of homestead and building and loan associations.
5162. Cancellation of inscriptions of unenforceable encumbrances; Parish of Orleans excepted
Upon the filing in his office of a sworn written request by the owner of any real or personal property or by any other party in interest, the recorder of mortgages of each parish, except the Parish of Orleans, shall cancel in full from the records of his office the inscriptions of all encumbrances affecting the property which shall have become unenforceable or shall have prescribed or perempted or the effect of which shall have ceased, because of lapse of time.
This Section applies to encumbrances in favor of the State of Louisiana and all its political subdivisions, as well as to those in favor of married women, minors, and interdicts.
[3] The provisions of R.S. 9:5685 applicable to this case are as follows:

The recordation of all judgments in favor of the state against individuals in the principal amount of one thousand dollars or less, exclusive of interest, costs, penalties or attorney's fees, shall be prescribed by the lapse of ten years from the date of recordation or rendition of such judgments.
However, by Act 311 of 1977 the statute was amended to read:
5685. Prescription against the state
All judgments in favor of the state against all persons in the principal amount of three thousand dollars or less, exclusive of interest, costs, penalties, or attorney fees, shall be prescribed by the lapse of ten years from the date of the signing of the judgment if rendered by a trial court, or from its rendition if rendered by an appellate court.
All liens and privileges in favor of the state securing a claim in the amount of three thousand dollars or less shall be prescribed by the lapse of ten years from the date of recordation of such privilege or lien, or by the lapse of a shorter prescriptive period applicable to the claim secured by the lien or privilege.
[4] See footnote two, supra, for text of R.S. 9:5162.
[5] La.Const. art. XIV, § 16 (1974) provides:

Provisions Continued as Statutes
Subject to change by law or as otherwise provided in this constitution, and except as any of them conflicts with this constitution, the following provisions of the Constitution of 1921 are continued as statutes, but restricted to the same effect as on the effective date of this constitution:
15. Article XIX, Sections 6, 19, 19(a), 20, and 27.
[6] The effective date of Act 386 of 1974 was July 31, 1974. The effective date of La.Const. art. XIV, § 16 (1974), continuing La.Const. art. XIX, § 19 (1921) as a statute, (and, hence, the effective date of the statute whose provisions are the provisions of art. XIX § 19 [1921] is midnight, December 31, 1974.