784 So.2d 718 (2001)
Jack HUFFMAN, et ux., Plaintiffs-Appellees,
v.
Ronnie Dale GOODMAN, Jr., et al., Defendants-Appellants.
No. 34,361-CA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 2001.
Writ Denied June 22, 2001.
*721 Pettiette, Armand, Dunkelman, Woodley, Byrd & Cromwell, L.L.P., by Donald Armand, Jr., Edwin H. Byrd, III, Shreveport, Counsel for Appellant, Argonaut Great Central Insurance Company.
Stamey Law Firm, by Joseph B. Stamey, Natchitoches, Counsel for Appellants, Trinity Universal Insurance Company and Podnuh's Bar-B-Que, Inc.
Cook, Yancey, King & Galloway, by Robert Kennedy, Jr., Shreveport, Counsel for Appellees, Powell Insurance Agency, Inc. and Utica Mutual Insurance Company.
Before NORRIS, STEWART & PEATROSS, JJ.
PEATROSS, J.
This appeal arises out of the trial court's sustaining Exceptions of Peremption and Prescription filed by Powell Insurance Agency, Inc. ("Powell") against Argonaut Great Central Insurance Company ("Argonaut"), Podnuh's Bar-B-Que ("Podnuh's") and Trinity Universal Insurance Company ("Trinity"). Argonaut, Podnuh's and Trinity appeal. For the reasons stated herein, the judgment of the trial court dismissing the cross claims of Argonaut, Podnuh's and Trinity is affirmed.

FACTS AND PROCEDURAL BACKGROUND
On May 25, 1995, Plaintiff, Jack Huffman, and Defendant, Ronnie Dale Goodman, were involved in a motorcycle/automobile accident resulting in injuries to Mr. Huffman. Mr. Goodman was a delivery driver for Podnuh's and was making deliveries when the accident occurred. Mr. Huffman and his wife ("Plaintiffs") sued Mr. Goodman and his insurer and added as defendants Podnuh's and its insurer, Trinity, via a First Supplemental and Amended Petition. Trinity provided an insurance policy covering Podnuh's hired and non-owned automobiles, which included the vehicle Mr. Goodman was driving at the time of the accident.
In May 1995, prior to the accident, additional insurance was obtained by Podnuh's from Argonaut through Powell.[1] The facts relevant to this appeal are those surrounding the coverage provided by Argonaut to Podnuh's and Powell's actions in procuring the coverage. On April 30, 1995, Powell, through its representative, John O'Brien, prepared a "Property and Casualty Insurance Proposal" for Podnuh's which included a quoted premium for $1,000,000 of coverage for hired and non-owned automobiles. Podnuh's accepted the proposal and made partial payment of the premium quoted. Mr. O'Brien contacted Argonaut regarding Podnuh's desire to have coverage for hired and non-owned automobiles. Argonaut specifically denied Powell's request to provide such coverage to Podnuh's in a written refusal sent to Powell on May 12, 1995. On May 23, 1995, however, Powell issued a binder with an effective *722 date of May 5, 1995, erroneously indicating that Argonaut was providing $1,000,000 in coverage to Podnuh's for hired and non-owned automobiles. On November 21, 1995, the actual policy was sent to Podnuh's with a letter from Mr. O'Brien indicating that the policy had been reviewed for errors and did provide the coverage requested by Podnuh's. Powell admits that the "x" marks on the binder next to hired and non-owned auto indicate that such coverage exists; however, Powell contends that the "x" marks were mistakenly placed in the boxes by a clerical assistant.[2] In the interim, on July 24, 1995, Plaintiffs had filed suit against Mr. Goodman and his personal insurer for damages resulting from the accident.
In August 1995, Powell issued two certificates of insurance to third parties which erroneously indicated that Podnuh's had hired and non-owned automobile coverage from Argonaut. Powell's explanation for the issuance of the certificates is that, once the information was mistakenly entered into the agency's computer (when the "x" marks were mistakenly placed on the binder) until the mistake was corrected, the computer would automatically generate erroneous certificates of insurance.
On October 30, 1995, by First Supplemental and Amending Petition, Plaintiffs added Podnuh's and Trinity as defendants. Podnuh's and Trinity filed an answer on December 28, 1995.
In September 1996, Podnuh's notified Powell of the claim arising out of the accident. Mr. O'Brien responded by letter dated September 23, 1996, which specifically references "Hired & Non-Owned Automobile" coverage. The letter reads as follows:
Dear Mr. Hooper (sic)[3]:
Enclosed is a copy of the May 12, 1995 memo regarding your hired & non-owned automobile (sic). The memo addresses several issues and specifically replies to our request to include hired and non-owned automobile (sic).
Obviously, this memo is very important because it is the reason Powell Insurance did not include hired & non-owned automobile coverage. As illustrated the underwriter indicated she contacted the Louisiana Automobile Liability Rating Bureau and was told an insured could not have two hired & non-owned policies. As your hired & non-owned claim evolves we will find out what relevance this memo will have. Please keep this memo for your file.... (Emphasis ours).
Powell, however, again issued certificates of coverage to third parties in October 1996 and March 1997 which erroneously indicated that Podnuh's did have hired and non-owned automobile coverage through Argonaut.
On October 31, 1997, by Fourth Supplemental and Amending Petition, Plaintiffs added Argonaut as a defendant. On January 15, 1998, Argonaut answered, denying coverage. On July 22, 1998, Plaintiffs filed a Supplemental and Amended Petition naming Powell as a defendant. On September 28, 1998, Powell responded to Plaintiffs' Fifth Supplemental and Amending Petition, filing a "Peremptory Exception *723 of No Right or Cause of Action." On October 17, 1998, Argonaut filed a cross claim against Powell alleging errors and omissions in association with the policy issued by it to Podnuh's and seeking indemnity in the event Argonaut was required to provide coverage for the loss. Argonaut also filed a third party demand against Powell's insurer, Utica Mutual Insurance Company ("Utica"). On June 14, 1999, Podnuh's and Trinity filed an answer and cross claim/third party demand in negligence against Powell and Utica claiming that, in the event there was a determination that the policy issued by Argonaut to Podnuh's did not provide hired and non-owned automobile coverage, then Powell was legally responsible for failing to properly procure coverage.[4] On June 24, 1999, the trial court granted Powell's Exception of No Right or Cause of Action and dismissed Plaintiffs' Fifth Supplemental and Amended Petition, finding that Plaintiffs had no cause of action against Powell. The ruling was affirmed by this court on August 23, 2000. See Huffman v. Goodman, 33,647 (La.App.2d Cir.8/23/00), 766 So.2d 651.
On June 21, 1999, Powell filed Exceptions of Peremption seeking the dismissal of Podnuh's, Trinity's and Argonaut's cross claims/third party demands. On October 29, 1999, Podnuh's filed a Supplemental and Amending Cross Claim and Third Party Demand against Powell alleging fraud. On November 15, 1999, Powell filed an Exception of Prescription seeking dismissal of Podnuh's Supplemental and Amending Cross Claim and Third Party Demand (fraud). On March 14, 2000, Powell filed a Motion to Withdraw Exception of Peremption and Substitute Exception of Prescription seeking dismissal of Podnuh's original cross claim/third party demand (negligence). On March 24, 2000, Powell filed an Exception of Prescription seeking dismissal of Argonaut's cross claim/third party demand. The various exceptions of peremption and prescription filed by Powell were submitted on memoranda and the trial court sustained each exception as to both Argonaut and Podnuh's without written reasons.[5]

DISCUSSION
The issues before us on appeal are whether the cross claims/third party demands of Podnuh's and Argonaut against Powell were timely. La. R.S. 9:5606 governs actions against insurance agents and reads as follows:
A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date *724 that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
C. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.
D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
Prescription prevents the enforcement of a legal obligation, but does not terminate the natural obligation. La. C.C. art. 1762(1). Peremption, on the other hand, extinguishes or destroys the underlying legal right. La. C.C. art. 3458; Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291. Public policy requires that rights to which peremptive periods attach are to be extinguished after passage of a specified period. Reeder v. North, supra. A peremptive period may not be interrupted or suspended and there is no provision for its renunciation. Id.
In 1999, the legislature amended 9:5606 adding subsection (D) which expressly makes both the one- and three-year periods of limitation peremptive. Acts 1999, No. 905, § 1.[6] Peremption is a form of prescription. Flowers v. Rausch, 364 So.2d 928 (La.1978). The amendment, however, seemingly creates a discrepancy between subsection (A) of the statute and the new subsection (D). Subsection (A) provides that the one-year period of limitation begins to run on the date the plaintiff discovered or should have discovered the alleged act, omission or neglect which incorporates the "discovery rule" principle of the doctrine of contra non valentem into the one-year limitation period. As previously stated, the addition of subsection (D), however, specifically makes both the one- and three-year periods peremptive periods, which may not be renounced, interrupted or suspended. In other words, the doctrine of contra non valentem does not apply. See Reeder, supra.
In construing the statute, we are guided by the rules governing statutory interpretation which instruct that all parts of a statute should be given effect and courts should not adopt a construction making any part superfluous or meaningless, if that result can be avoided. First National Bank of Boston v. Beckwith Machinery Co., 94-2065 (La.2/20/95), 650 So.2d 1148. Unnecessary conflict in the statute should be avoided. Moreover, the goal of statutory interpretation is to achieve the legislative intent behind the statute at issue. Id., citing Smith v. Flournoy, 238 La. 432, 115 So.2d 809 (La. 1959). Prior to the amendment of 9:5606 in 1999, the one-year limitation period was construed by courts to be prescriptive in nature. With the 1999 amendment, the legislature exercised its prerogative to expressly provide that both the one- and three-year periods be peremptive in nature. *725 We, therefore, conclude that the current provisions of 9:5606 set forth a one-year peremptive period which begins to run from the date the plaintiff discovered or should have discovered the alleged act, omission or neglect. Once that peremptive period begins to run, it is not subject to contra non valentem, i.e., it may not then be renounced, interrupted or suspended. The "discovery rule" merely provides the starting point for the running of the one-year period and is not a suspension or interruption of the time period as is the case with contra non valentem. As with the three-year peremptive period, if a plaintiff fails to file his/her action within that one-year peremptive period, the action is extinguished.
Against that statutory framework, we will first address the cross claim/third party demand filed by Podnuh's.

Podnuh's Cross Claim/Third Party Demand
As a preliminary matter, we note that Powell withdrew its exception of peremption as to Podnuh's cross claim/third party demand, substituting it with an exception of prescription. Peremption, however, may be raised by a party or by a court "at any time prior to final judgment." La. C.C. art. 3460. After carefully analyzing the record, and despite Powell's withdrawal of its exception of peremption, we find that Podnuh's claims were, in fact, extinguished by peremption.
Our analysis begins with the recognition that, while the legislature has imposed a one-year limitation on actions against insurance agents, brokers and solicitors, it has also put a three-year limit on these actions by further stating that "[h]owever, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect." La. R.S. 9:5606(A). In other words, if a claim of negligence, as alleged in Podnuh's original cross claim/third party demand against Powell, is not filed within three years of the alleged act, it is extinguished by peremption, regardless of whether or not it was filed within the one-year limitation period. The statute, however, exempts cases of fraud (as defined in La. C.C. art.1953) from the three-year peremptive period. La. R.S. 9:5606(C). Podnuh's sought to avail itself of the exemption by filing a Supplemental and Amending Cross Claim and Third Party Demand which transformed its original claim of negligence into one of fraud.[7] Our initial inquiry, therefore, is whether or not this is a case of fraud as alleged by Podnuh's. We find that it is not.
La. C.C. art.1953 defines fraud as "a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party to cause a loss or inconvenience to the other." For an act to constitute fraud, it must be calculated to produce a misleading effect. McCoy v. City of Monroe 32,521 (La.App.2d Cir.12/8/99), 747 So.2d 1234. Podnuh's Supplemental and Amending Cross Claim and Third Party Demand against Powell alleges that Powell failed to communicate to Podnuh's that Argonaut had refused to issue coverage for hired and non-owned automobiles. Further, Podnuh's alleges, inter alia, that Powell's concealment and/or suppression and/or silence regarding the communication from Argonaut to Powell on May 12, 1995, was *726 with the intent to secure the business of Podnuh's. We disagree.
The erroneous insurance binder was issued by Powell on May 23, 1995 (two days before the accident at issue in this case). Two certificates of insurance erroneously indicating that Podnuh's had coverage for hired and non-owned automobiles were issued in August 1995. In September 1996, Podnuh's notified Powell of the claim arising from the accident. We can find nothing in the record which indicates that Powell had any knowledge of the mistake on the insurance binder (which caused the erroneous certificates of insurance to be issued) until it was notified of the claim. Clearly, Powell could not fraudulently conceal its mistake from Podnuh's or Argonaut if it had no knowledge of that mistake. Thus, any actions or inactions of Powell prior to its notification of the claim in September 1996 cannot be considered fraudulent. Further, Powell responded to notification of the claim immediately with the September 23, 1996 letter to Podnuh's quoted earlier in this opinion. This correspondence is critical because it makes clear that Powell did not include hired and non-owned coverage in Podnuh's policy. Podnuh's receipt of this correspondence is evidence of its knowledge that Powell did not procure hired and non-owned automobile coverage. Podnuh's acknowledges this in its Supplemental and Amending Cross Claim and Third Party Demand wherein it states that the letter of September 23, 1996, notified it that there "might not be coverage consistent with the proposal, and in particular, that there was no coverage for hired and non-owned autos." (Emphasis ours.) Thus, any of Powell's actions or inactions after notifying Podnuh's that such coverage did not exist cannot be said to be fraudulent.[8] Podnuh's has made no showing that Powell acted fraudulently in any way. Nothing in the record before this court indicates that Powell intentionally made any misrepresentations to Podnuh's or attempted to suppress the truth from Podnuh's in an attempt to mislead or deceive it. In addition, we note that the trial court necessarily reached the same conclusion when it sustained Powell's exceptions.
Absent fraud, Podnuh's initial cross claim/third party demand against Powell is subject to the three-year peremptive period. The statute clearly states that the three-year peremptive period begins running on the date of the alleged act, omission or neglect. In this regard, Podnuh's argues that the issuance of each of the erroneous certificates of insurance constitutes a separate error or omission such that the three-year peremptive period would not have begun to run until March 27, 1997, the date the last certificate of insurance was issued. If that is the case, Podnuh's cross claim/third party demand, filed on June 14, 1999, was not extinguished by peremption. We are not persuaded, however, by Podnuh's argument. The alleged act which caused Podnuh's potential loss was the issuance of the erroneous insurance binder on May 23, 1995. While the subsequent issuance of the various *727 certificates of insurance may have been negligent, the issuance of the certificates did not form the basis for Podnuh's claim against Powell. Simply put, Podnuh's suffered no damage as a result of the issuance of the certificates. We find, therefore, that the peremptive period began running on May 23, 1995. Since Podnuh's cross claim/third party demand was not filed until June 14, 1999, more than three years after the issuance of the binder, Podnuh's claim was extinguished by three-year peremption.
Assuming arguendo that there was fraud on the part of Powell, we further find that Podnuh's claim was extinguished by one-year peremption. As a threshold matter, we note that subsection (C) of 9:5606 provides an exception for cases of fraud to the peremptive (singular) period in subsection (A). Difficulty arises in applying subsection (C) after the 1999 amendment because subsection (A) now contains two peremptive periods. For the following reasons, however, we find that the fraud exception contained in subsection (C) does not apply to the one-year peremptive period in subsection (A), except insofar as any fraudulent representation or concealment may delay the start of the one-year period until the plaintiff discovered or should have discovered the alleged act, omission or neglect.
As previously stated, prior to the 1999 amendment, the one-year period was construed as prescriptive rather than peremptive. The use of the singular rather than the plural form of the word "period" indicates that the exception is intended to apply only to the three-year period, again, as it did prior to the 1999 amendment which made the one-year period peremptive rather than prescriptive.[9] Had the legislature intended to exempt cases of fraud from the one-year peremptive period as well as the three-year peremptive period, it could have easily amended subsection (C) to so provide or it could have further amended subsection (A) to exclude all actions of fraud. We conclude, therefore, that the fraud exception in subsection (C) applies only to the three-year peremptive period. At least one court has reached the same conclusion. See Broussard v. Toce, 99-555 (La.App. 3d Cir.10/13/99), 746 So.2d 659, holding that La. R.S. 9:5605(E), the fraud exception in the legal malpractice statute, carves out an exception for the three-year peremptive period only. See also Broussard v. F.A. Richard & Associates, Inc., 98-1167 (La. App. 3d Cir.3/17/99), 732 So.2d 578.[10]
We will now apply the one-year peremptory limitation to Podnuh's claim. Recall that the one-year peremptive period begins to run on the date of the alleged act, omission or neglect or the date on which the plaintiff discovered or should have discovered the act, omission or neglect. In this case, we conclude that Podnuh's discovered that Powell had not provided coverage for hired and non-owned automobiles in September 1996, when it received the letter from Mr. O'Brien quoted *728 earlier in this opinion. That correspondence clearly indicated to Podnuh's that, despite Podnuh's understanding that such coverage existed, Argonaut did not provide the coverage. Podnuh's, therefore, had until September 1997, one year from the date it received that correspondence, to file its claim against Powell. Since Podnuh's claim was not filed until June 14, 1999, it was extinguished by one-year peremption.
Podnuh's argues that, since its claim was one for indemnification, the one-year period of limitation should not commence until it is cast in judgment. According to Podnuh's, this is because the cause of action does not arise until the plaintiff has suffered actual and appreciable damage. In support, Podnuh's cites a number of cases which hold to that effect.[11] Significantly, these cases all involve issue of prescription rather than peremption. In addition, the majority of the cases cited by Podnuh's pre-date the enactment of La. R.S. 9:5606 and, therefore, were decided under La. C.C. art. 3492 which provides that delictual actions are subject to a liberative prescription period of one year which "commences to run from the day injury or damage is sustained." From this article stemmed the notion of "appreciable damages" and the idea that a party must not only be aware that he or she has a claim, but must also have suffered actual damage before prescription begins to run. Podnuh's also cites the supreme court case of Harvey v. Dixie Graphics, Inc., 593 So.2d 351 (La.1992), for the proposition that a plaintiff cannot know or reasonably be expected to know of an act, omission or neglect that begins the running of prescription until he has suffered "appreciable damage." The supreme court, however, was applying the general rule of La. C.C. art. 3492 and specifically acknowledged that that article applied "in the absence of more specific legislation." The enactment of La. R.S. 9:5606 in 1991, however, expressly states that the date on which the one-year period starts to run is the date of the act, omission or neglect or the date on which the act, omission or neglect is discovered or should have been discovered. In cases covered by the statute, therefore, the running of the one-year period no longer commences when the party is injured or has sustained damage. Accordingly, we conclude that the general rule regarding the commencement of the prescriptive period in cases of indemnification, which recall is rooted in the notions of injury and sustained damages, does not apply.
The Louisiana Supreme Court interpreted a similar provision in La. R.S. 9:5605, the legal malpractice statute, in Reeder v. North, supra. That statute contains identical language regarding the date on which the one- and three-year periods of limitation commence. Reeder involved the three-year rather than the one-year period of limitation, but the reasoning of the supreme court regarding interpretation of the statute is instructive. The court of appeal in Reeder held that the running of the three-year period did not commence until the "facts ripened into a viable cause of action sufficient to support a lawsuit." The supreme court disagreed, recognizing that the legislature was "particularly clear in wording" the provision "so as to leave *729 no doubt as to its intent" regarding when the time period was to begin running. La. C.C. art. 9 requires that, "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."
This reasoning was applied to the one-year period of La. R.S. 9:5605 in Kennedy ex rel. Kennedy v. Macaluso, XXXX-XXXX (La.App. 1st Cir.2/16/01), ___ So.2d ___, 2001 WL 128477. The Kennedy court explained that the "appreciable damage" analysis was a jurisprudential tool to aid in determining when "injury or damage was sustained" under the traditional article 3492 liberative prescription analysis. The court noted that the appreciable damage analysis may still be useful in certain cases to determine the date of discovery; but "to the extent that its application yields a date other than an earlier date of discovery, as dictated by the statute's clear and express language," it was inapplicable. In Kennedy there was clear and definite evidence of the date that the plaintiff discovered the alleged act; and the court, applying 9:5605 by its terms, used that date as the starting date of the one-year period of limitation.
We find that the same reasoning employed by the supreme court in Reeder and the first circuit in Kennedy should apply to the periods of limitation in 9:5606. The language of 9:5606(A) clearly and unambiguously provides when the one-year limitation period shall commence; and, like the legal malpractice statute, 9:5606 warrants strict interpretation. Accordingly, the running of the one-year peremptive period as to Podnuh's claims commenced on the date it discovered or should have discovered the alleged act, omission or neglect.
As in Kennedy, supra, there is no question in the case sub judice that Podnuh's knew, or should have known, that Powell had not provided coverage for hired and non-owned automobiles and that Argonaut had expressly told Powell that it would not underwrite that coverage in September 1996 when it received Mr. O'Brien's letter. Podnuh's, therefore, had until September 1997 to file a claim against Powell. We conclude that Podnuh's had the requisite knowledge of Powell's alleged wrongdoing, but simply waited too long to file its claim.
We have not been presented with, nor can we conceive of, a persuasive argument why we should not apply the statute according to its terms to claims of indemnification. Subsection A of 9:5606 provides that the limitation period applies to all "action[s] for damages" against insurance agencies. An indemnification claim is a claim for damages. Lombardo v. Deshotel, 94-1172 (La.11/30/94); 647 So.2d 1086; Life Investors Insurance Company Of America v. John R. Young Chevrolet, Inc., 98-1562 (La.App. 3d Cir.3/3/99), 730 So.2d 519, writ denied, 99-1443 (La.9/3/99), 747 So.2d 545. The legislature did not make exception for claims of indemnification and we decline to create such an exception. We are cognizant of the fact that a party may not be able to quantify its indemnification claim until judgment is rendered against it. This, however, does not preclude the party's assertion of that claim prior to being cast in judgment. So long as the right has been exercised and so long as the action is pending, the lapse of the period of peremption does not extinguish the right. See Revision Comment (c) to La. C.C. art. 3461.
Podnuh's also cites the decision of this court in Clayborn Timber Co., Inc. v. Butler Insurance and Real Estate, Inc., 29,194 (La.App.2d Cir.2/26/97), 690 So.2d 940, for the proposition that the running of the time limitation in La. R.S. 9:5606 on a *730 claim for indemnity does not begin until the party seeking indemnity has been cast in judgment. Podnuh's misconstrues the holding of Clayborn. In that case, Clayborn had contracted with Butler Insurance and Real Estate for general liability insurance. Subsequently, Clayborn was sued in Miller County, Arkansas, for damages arising out of an automobile accident. Clayborn submitted the claim to Butler to defend, but Butler failed to provide a defense. Default judgment was entered against Clayborn who, in turn, filed suit against Butler. Butler claimed it never received notification of the claim and Clayborn argued that Butler never notified Clayborn that it denied coverage. Butler filed an exception of prescription which was sustained by the trial court. We reversed, finding that there was no evidence that the plaintiff discovered or should have discovered the alleged tortious conduct prior to the entry of a default judgment. We concluded that the defendant had failed to carry its burden of proving that the limitation period began to run at a point prior to the entry of the default judgment. Simply put, the entry of the default judgment was not found to be the starting date for the running of prescription because the claim was one of indemnity, but because it was the only evidence of the plaintiff's knowledge of the alleged wrongful act, i.e., it represented the date of the plaintiff's discovery. For this reason, Clayborn is inapposite to the instant case. In the case sub judice, as we have already discussed, the determination of Podnuh's "discovery" of the alleged act in this case is greatly facilitated by the letter from Mr. O'Brien to Podnuh's. We need not go any further into the record to find other evidence of Podnuh's knowledge of the alleged wrongful act.
We now turn to the cross claim/third party demand filed by Argonaut.

Argonaut's Cross Claim/Third Party Demand
As with Podnuh's claim, we begin our analysis with the three-year peremptive period. Argonaut's cross claim/ third party demand was filed on October 17, 1998, clearly more than three years after the issuance of the binder on May 23, 1995. La. C.Civ.P. art. 1067, however, creates an exception to prescription and peremption for incidental or third party demands:
An incidental demand is not barred by prescription or peremption if it was not barred at the time the main demand was filed and is filed within ninety days of date of service of main demand or in the case of a third party defendant within ninety days from service of process of the third party demand.
It is also well settled that the main demand is not limited to include only the original petition. Moore v. Gencorp, Inc., 93-0814 (La.3/22/94), 633 So.2d 1268. The main demand also includes any supplemental and amending petitions that relate back to the original petition. Id. La. C.Civ. P. art. 1153 governs relation back:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
Article 1153 is an attempt to strike a balance between a plaintiffs right to proceed against the correct defendant and the defendant's right to be free from stale and prescribed claims. Hunsucker v. Global Business Furniture, 33,972 (La.App.2d Cir.9/27/00), 768 So.2d 698, writ denied, 2000 3013 (La.12/15/00), 777 So.2d 1235; Fortenberry v. Glock, Inc. (USA), 32,020 (La.App.2d Cir.6/16/99), 741 So.2d 863.
*731 The question we must answer, therefore, is whether Argonaut's cross claim/third party demand against Powell was filed within 90 days of an amended pleading which relates back to the filing of the original petition. Plaintiffs' Fifth Supplemental and Amended Petition was filed on July 22, 1998; Argonaut's cross claim/third party demand was filed on October 17, 1998, clearly within 90 days of the Fifth Supplemental and Amended Petition. Since Argonaut has not pled or asserted fraud on the part of Powell, see footnote 4, supra, the critical inquiry is whether or not the Fifth Supplemental and Amended Petition relates back to the original petition. We find that it does not.
The purpose of Plaintiffs' Fifth Supplemental and Amended Petition was to add Powell as a defendant. Until that filing, Powell was not a party to the suit. There are no other new or different allegations contained in the Fifth Supplemental and Amended Petition.[12] Article 1153 does not authorize the relation back of an amendment which merely adds a new defendant. Hebert v. Doctor's Memorial Hospital, 486 So.2d 717 (La.1986). The supreme court in Ray v. Alexandria Mall, Through St. Paul Property & Liability Ins., 434 So.2d 1083 (La.1983), established the following criteria for determining whether article 1153 allows an amendment which changes the identity of the party defendant to relate back to the original petition:
(1) The amended claim must arise out of the same transaction or occurrence set forth in the original pleading;
(2) The purported substitute defendant must have received notice of the institution of the action such that he will not be prejudiced in maintaining a defense on the merits;
(3) The purported substitute defendant must know or should have known that but for a mistake concerning the identity of the proper party defendant, the action would have been brought against him;
(4) The purported substitute defendant must not be a wholly new or unrelated defendant, since this would be tantamount to assertion of a new cause of action which would have otherwise prescribed.
We have previously recognized that the most frequently disputed elements of the Ray standard involve notice of the proceedings issues. Montminy v. Jobe, 600 So.2d 121 (La.App. 2d Cir.1992), writ denied, 604 So.2d 1003 (La.1992). This case, however, turns on the fourth element of the Ray standard concerning whether Powell was a wholly new and unrelated defendant.[13] Noting that article 1153 was based on Federal Rule of Civil Procedure *732 15(C)[14], the court in Ray, supra, recognized that the federal rule altered the "generally accepted rule that a new defendant may not be added after prescription has run, and the facts of each case must be viewed carefully" because the rule does not apply where the amendment seeks to add a new and unrelated defendant. The supreme court quoted with approval the following objective standard utilized by the court of appeal in Taormina Corp. v. Escobedo, 254 F.2d 171 (5th Cir.1958), cert. denied, 358 U.S. 827, 79 S.Ct. 44, 3 L.Ed.2d 66 (1958):
[Is it] reasonable to conclude that the plaintiff had in mind a particular entity or person, merely made a mistake as to the name, and actually served the entity or person intended; or [did] the plaintiff actually [mean] to serve and sue a different person. (Internal citations omitted.)
In Findley v. City of Baton Rouge, 570 So.2d 1168 (La.1990), the supreme court described the relationship between the original defendant and the defendant sought to be added as an "identity of interest." The court stated:
Sufficiency of the identity of interest depends upon the closeness of the relationship between the parties in their business operations and other activities, an identity of interest having been found between a parent corporation and a wholly owned subsidiary.
In order to determine whether there is a sufficient identity of interest, we should examine the closeness of the relationship between the parties in their business operations and other activities. Compeaux v. Plaisance Inspection & Enterprises, Inc., 93-1165 (La.App. 1st Cir.6/24/94), 639 So.2d 434.
As a result of the above jurisprudence, this court has found in several cases that a substituted defendant is wholly new or unrelated where there is no connexity between the originally named defendant and the defendant sought to be added. In Hunsucker, supra, we found the substituted defendant to be wholly new and unrelated where the plaintiff misidentified the manufacturer of a chair which caused the plaintiff injury and belatedly attempted to correct the mistake by way of amended petition. The plaintiff in Hunsucker argued that the amendment should relate back because he had always intended to sue the correct manufacturer; and, therefore, the amendment was merely a correction of a misnomer. We dismissed that argument, recognizing that every plaintiff attempts to sue the correct tortfeasor, but that does not necessarily supply the requisite connexity to allow a plaintiff to add a new defendant after the time limitation has run on the claim.
Similarly, in Moon v. Shreveport Associates, 571 So.2d 799 (La.App. 2d Cir.1990), writ not considered, 576 So.2d 23 (La. 1991), this court found two defendants wholly new and unrelated where the plaintiff originally filed suit against Shreveport Associates and, after the prescriptive period *733 had run, sought to substitute the correct defendant, Shreveport Associates Limited Partnership. Each of the two entities maintained a different corporate residence and agent for service of process. Likewise, in Newton v. Ouachita Parish School Board, 624 So.2d 44 (La.App. 2d Cir.1993), the plaintiff mistakenly named the Ouachita Parish School Board as defendant in a suit for injuries sustained when she was allegedly attacked and beaten on the campus of Carroll Junior High School. After the prescriptive period had expired, plaintiff discovered that the school was actually under control of the Monroe City School Board and she filed an amended petition adding the Monroe City School Board as defendant. We held that the fact that general counsel for the Ouachita Parish School Board also represented the liability carrier of the Monroe City School Board did not provide the type of connexity necessary to allow the amendment to relate back.[15]
Compare Ray, supra, in which plaintiff slipped and fell in Alexandria Mall and mistakenly named the defendant as "Alexandria Mall" instead of "Alexandria Mall Company." The supreme court allowed the amended pleading correcting the name of the defendant finding it clear that the amended petition named no wholly new or unrelated defendant because there is only one Alexandria Mall in Alexandria and defendants had extensive knowledge of the plaintiffs claim and would not be prejudiced by the amendment.
Also compare Findley, supra, where the plaintiff was injured when he hit a pot hole while riding his bicycle in a public park. The amended pleading sought to substitute the proper defendant, the BREC (the parish recreation and parks commission), for the originally named defendant, the City of Baton Rouge. Finding that the relationship between the BREC and the City of Baton Rouge was much like that of parent and subsidiary corporation and that the BREC knew that, but for the plaintiffs mistake in naming the City of Baton Rouge it would have been sued, the supreme court allowed the amendment to relate back to the filing of the original petition.
In the case sub judice, Powell was not a substitute defendant, but was a new defendant added by Plaintiffs' Fifth Supplemental and Amended Petition. The fact that Powell assumed the role of broker between Argonaut and Podnuh's does not create an identity of interest or connexity between the two that would allow the addition of Powell to relate back. The two are separate entities with no relationship other than one procuring business for the other. Plaintiffs obviously intended to sue the insurer of Podnuh's for the injuries sustained in the accident, but the addition of Powell was more than correction of a misnomer. There is no persuasive argument that these two entities have any identity of interest. We find, therefore, that Powell was a wholly new and unrelated defendant and was entitled to rely on the protection of the limitation periods established by La. R.S. 9:5606. In other words, once the three-year peremptive period expired, Powell was entitled to be secure in the knowledge that no claim arising out of the automobile accident could be asserted against it.
Since we find that Plaintiffs' Fifth Supplemental and Amended Petition does not relate back to the filing of the original petition, or any intervening amended petition, article 1067 does not operate to save *734 Argonaut's cross claim/third party demand against Powell. Again, although Argonaut's cross claim/third party demand was filed within 90 days of the Fifth Supplemental and Amended Petition, since that petition does not relate back, it is not part of the "main demand" as required by article 1067. Without the benefit of article 1067, Argonaut's cross claim/third party demand was extinguished by the three-year peremptive period. In light of this finding, the issue of the one-year peremptive period is moot.

CONCLUSION
For the reasons stated herein, the judgment of the trial court dismissing the Cross Claims and Third Party Demands of Argonaut Great Central Insurance Company, Podnuh's Bar-B-Que and Trinity Universal Insurance Company against Powell Insurance Agency, Inc., is affirmed. Costs are assessed one-half to Podnuh's and Trinity and one-half to Argonaut.
AFFIRMED.
NOTES
[1] Powell was acting as a broker with Argonaut as the actual insurer for the coverage sold to Podnuh's.
[2] According to Powell, this mistake occurred when the agency was overwhelmed with claims resulting from the flooding of the New Orleans area in 1995. Not only was the agency hit with a large number of claims, Powell's office facility was apparently damaged by the heavy rain.
[3] John Hopper represented Podnuh's in its dealings with Powell concerning the insurance matters at issue.
[4] Argonaut also filed a third party demand against Powell alleging fraud, which was later withdrawn. And, Argonaut does not argue on appeal that Powell's actions were fraudulent.
[5] The judgment of the trial court stated:

After considering the entire record, the argument of counsel, and the applicable law:
IT IS HEREBY ORDERED, ADJUDGED and DECREED that the Exceptions of Peremption and Prescription filed by POWELL INSURANCE AGENCY, INC. as to the cross claim of ARGONAUT GREAT CENTRAL INSURANCE COMPANY are sustained.
IT IS HEREBY ORDERED, ADJUDGED and DECREED that the Exceptions of Peremption and Prescription filed by POWELL INSURANCE AGENCY, INC. as to the cross claim of and PODNUH'S are sustained.
[6] Even though the amendment post dates the events on which the underlying action is based, the amendment was intended to clarify existing law and to be remedial in nature. Acts 1999, No. 905, § 2. La. C.C. art. 6 provides that interpretive laws apply both prospectively and retroactively; therefore, the amendment is applicable to the present case.
[7] The filing of Podnuh's claim in fraud came shortly after the filing of the exception of peremption by Powell.
[8] Podnuh's first cross claim/third party demand against Powell sought indemnity for any damages for which it might be held liable due to Powell's negligence in failing to procure coverage for hired and non-owned automobiles. As previously stated, after the filing of Powell's Exception of Peremption, Podnuh's attempted to take advantage of the exemption for cases of fraud in La. R.S. 9:5606(C) by filing the Supplemental and Amending Cross Claim and Third Party Demand alleging that Powell's actions and/or inactions were fraudulent. Powell's actions, however, cannot be both negligent and fraudulent. Podnuh's cannot resurrect an extinguished negligence claim by now alleging that the same conduct was fraudulent.
[9] One case has stated in dicta that the fraud exception in subsection (C) also applies to the one-year peremptive period. See Coffey v. Block, 99-1221 (La.App. 1st Cir.6/23/00), 762 So.2d 1181, writ denied, 2000-2226 (La.10/27/00), 772 So.2d 651.
[10] The third circuit refers to the one-year period in 9:5605 as a prescriptive period, while at the same time acknowledging that the statute specifically states that both the one- and three-year periods are peremptive. On a first reading, this appears inconsistent; however, recall that the codal articles dealing with peremption are contained within the chapter entitled "Prescription." Peremption is a form of prescription, but is not subject to renunciation, interruption or suspension. Flowers v. Rausch, supra.
[11] McKneely v. Don Coleman Construction Co., Inc., 441 So.2d 497 (La.App. 2d Cir. 1983); Smith v. Hartford Accident & Indemnity Co., 399 So.2d 1193 (La.App. 3d Cir.1981), writ denied, 406 So.2d 604 (La.1981); Orleans Parish School Board v. Pete Vicari General Contractor, Inc., 99-2099 (La.App. 4th Cir.1/26/00), 751 So.2d 1021; Blue Streak Enterprises, Inc. v. Gulf Coast Marine, Inc., 370 So.2d 633 (La.App. 4th Cir.1979); Mayo v. Benson Chevrolet Co., Inc., 97-1121 (La.App. 5th Cir.8/25/98), 717 So.2d 1247; Wilson v. New Orleans Metairie Hospital Foundation, 487 So.2d 687 (La.App. 5th Cir.1986).
[12] Argonaut argues that, in addition to adding Powell as a defendant, Plaintiffs' Fifth Supplemental and Amended Petition actually stated a claim against Argonaut; and, therefore, its cross claim/third party demand should be allowed. We disagree. Without including the entire text of the Fifth petition, we note that the only references to Argonaut in the allegations contained in that petition concern Argonaut's relationship to Powell in explanation of why Plaintiffs claimed that Powell was a de facto insurer of Podnuh's. Likewise, we are not persuaded by Argonaut's argument that the preliminary allegations of the Fifth petition, which restate and reallege the allegations from all previously filed petitions, constitute new allegations against Argonaut which would extend the time period during which it could file an incidental demand.
[13] For cases involving the addition of plaintiffs, see Giroir v. South Louisiana Medical Center, Div. of Hospitals, 475 So.2d 1040 (La. 1985); Spencer-Wallington, Inc. v. Service Merchandise, Inc., 562 So.2d 1060 (La.App. 1st Cir.1990), writ denied, 567 So.2d 109 (La. 1990); Brown v. City of New Orleans, 580 So.2d 1093 (La.App. 4th Cir.1991).
[14] Fed.R.Civ.P. 15(C) provides as follows:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.
[15] Accord Migliori v. Willows Apartments, 99-2784, 99-2799 (La.App. 4th Cir.5/31/00), 765 So.2d 435, writ denied, XXXX-XXXX (La.9/29/00), 770 So.2d 352; West v. Parish of Jefferson, 96-530 (La.App. 5th Cir.11/26/96), 685 So.2d 371.