947 So.2d 90 (2006)
Mohammad MAHBOD
v.
Mersedeh EBRAHIMI (Busse), ABC Insurance Company, New York Life Insurance and Annuity Corporation and First Variable Life Insurance Company.
No. 06-CA-235.
Court of Appeal of Louisiana, Fifth Circuit.
November 28, 2006.
*91 John-Michael Lawrence, Attorney at Law, New Orleans, Louisiana, for Plaintiff/Appellant.
Maura Z. Pelleteri, Amy M. Seltzer, Attorneys at Law, New Orleans, Louisiana, for Defendant/Appellee.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
Plaintiff, Mohammad Mahbod, appeals the grant of a summary judgment in favor of defendant, New York Life Insurance & Annuity Corporation (New York Life), dismissing with prejudice all claims made by plaintiff against New York Life. The court further decreed the judgment was final for purposes of appeal. For reasons set forth in this opinion, we affirm.
The underlying action began with the filing of a "Petition for Damages and Nullification of Variable Universal Life Insurance Contract," against New York Life, First Variable Life Insurance Company (First Variable), life insurance agent Mersedeh Ebrahimi, and her professional liability insurer. In the petition, Mahbod asserts that he purchased a variable life insurance policy with a face value of $500,000.00 from Ebrahimi, acting as agent for New York Life. She subsequently convinced him to cancel that policy and purchase one of the same face value with First Variable. In the process of these transactions it is alleged that Ebrahimi made "numerous false statements and material misrepresentations" concerning the universal life insurance policies she sold him.
Specifically, Mahbod asserts that in May of 1999 Ebrahimi presented a variable life insurance policy with New York Life having a face value of $500,000.00 with a monthly premium of $629.69, to be fully paid up in five years. Mahbod further alleges that in 2000, after some controversy about whether Mahbod was a smoker, Mahbod was placed in the "non-preferred" category and the terms of the policy were changed, extending the period for paying premiums from five to ten years. According to the petition, Ebrahimi promised that if she could not secure the policy on the terms originally promised, she would transfer the policy to one with another company. That new policy would have the same face value, and he would have to pay premiums for only five years. Ebrahimi also told Mahbod he would receive a credit of approximately $10,000.00 toward the new policy for the $11, 775.28 in premiums already paid on the New York Life policy. The new policy would be written by First Variable. Based on these representations, Mahbod signed documents necessary to cancel the New York Life policy and transfer to the First Variable policy, causing him to suffer damages.
Mahbod asserts that in April of 2003 he learned he would have to pay premiums indefinitely and that he was only given a credit of $3,468.00. Mahbod seeks damages, and further, to have the First Variable insurance company policy declared null and void.
New York Life answered the petition, admitting that it issued a variable life insurance policy to Mahbod in May of 1999, and that Ebrahimi was an agent of the company, although that relationship ended in August of 2000. Additionally, New York Life filed exceptions of prescription, peremption and no cause of action. The basis of the prescription/peremption exceptions is that the policy was issued in 1999 and the suit was filed in 2003. In support, New York Life cites La. R.S. 9:5606 and La. C.C. art. 3492. The no cause of action *92 exception is based on the fact that Mahbod voluntarily surrendered his New York Life policy in 2000 for cancellation. The exceptions were denied by the trial court.
After discovery was conducted by the parties, New York Life filed a motion for summary judgment. Mahbod opposed the motion and the matter went before the trial court for a hearing, after which the judgment at issue herein was rendered.
The memorandum in support of New York Life's motion for summary judgment incorporates the exceptions of prescription, peremption and no cause of action previously denied, as well as summary judgment, and the arguments were also combined at the hearing. However, because we find the summary judgment was correctly granted, we need not consider the arguments on the exceptions.
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.C.C.P. art. 966(B). Our review of summary judgments on appeal is de novo using the same criteria applied by the district court in order to determine whether the grant of summary judgment was appropriate. Gautreaux v. Dufrene, 04-970 (La.App. 5 Cir. 1/11/05), 894 So.2d 385, 387. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of actions. La.C.C.P. art. 966(A)(2). Decisions as to the propriety of granting the motion must be made with reference to the substantive law applicable to the case. Mohsan v. Roule-Graham, 05-122 (La. App. 5 Cir. 6/28/05), 907 So.2d 804.
As explained by the Louisiana Supreme Court;
............. The interpretation of an insurance contract is nothing more than a determination of the common intent of the parties. Obviously, the initial determination of the parties' intent is found in the insurance policy itself. In analyzing a policy provision, the words, often being terms of art, must be given their technical meaning. When those technical words are unambiguous and the parties' intent is clear, the insurance contract will be enforced as written.

Doerr v. Mobil Oil Corp., XXXX-XXXX (La.12/19/00), 774 So.2d 119, 123-124; rehearing granted for correction only, 00-0947 (La.3/16/01), 782 So.2d 573.
One fact not in dispute is that Mahbod applied for and was issued a variable life insurance policy by New York Life in 1999. A copy of the application and the policy issued are among the documents attached to New York Life's motion for summary judgment. There is no dispute among the parties that these documents are authentic. On the face of policy # 63611014 issued to Mohammad Mahbod by New York Life the following clause is written:
Payment of premiums. While this policy is in force, premiums can be paid at any time before the policy anniversary on which the insured is age 95, and while the insured is living. They can be paid at any interval or by any method we make available, subject to the Premiums section. The amount and interval of scheduled premiums, as stated in the application for this policy, are shown on the Policy Data page.
The premiums page of the policy reads as follows:
Scheduled premium payable at monthly intervals: $692.95. .....
.....Premiums cannot be paid on or after the policy anniversary on which the insured is age 95, which is May 17, 2048. Coverage will expire when the *93 cash value less surrender charges, and any unpaid loans and accrued interest is insufficient to cover the monthly deduction. ........
A policy receipt form executed by Mahbod on August 3, 1999 acknowledges that he received a copy of the policy and his application. As part of the application process, Mahbod selected four options for investment in the special account associated with this policy. Also included is a presentation made by Ebrahimi specifically for Mahbod entitled "Variable Universal Life Insurance Illustration." The document charts return rates for the separate investment account which forms part of the variable life policy. On the front page of the document it states:
The purpose of this illustration is to show how the performance of the underlying investment accounts could affect the policy cash value and life insurance benefit. This illustration is hypothetical and may not be used to project or predict investment results. Specifically, the values shown in this illustration reflect hypothetical assumptions as to investment rate of return, premium payment option, life insurance benefit option, face amount, policy transactions, and policy changes. The values would be affected by a change in any of these assumptions, the investment rates of return shown in this illustration are hypothetical level annual rates of return. Even if the average rate of return, over a specified period, is the same as the hypothetical rate, actual results will vary due to fluctuations in the actual rates of return. Because this is a flexible premium policy, it is the responsibility of the policy owner to assure that sufficient premiums are paid to keep the policy in force. A policy may terminate due to insufficient premiums and/or poor investment performance. Excessive loans and/or withdrawals may cause the policy to lapse due to insufficient cash surrender values.
The policy states that, "(n)o agent is authorized to change this contract."
In support of his opposition to the motion for summary judgment, Mahbod presented his deposition in which he verified his signature on the application as well as the receipt of policy form. He stated that Ebrahimi's representation that the premiums would only be due for only five years was made prior to the signing of these forms. Mahbod states that he does not have an illustration showing that he was to pay $692 for five years because Ebrahimi kept it. Mahbod suggested that Ebrahimi removed it from the file and substituted a "fake" one. He could not recall whether any of the above language was on that illustration.
In his deposition, Mahbod acknowledged that he knew on August 31, 2000 that the New York Life policy could not be paid up in five years, and he discussed transferring the policy to First Variable with Ebrahimi.
Mahbod also stated that after his request for cancellation of the New York Life policy, he was contacted by Mathew McGovern, who tried to convince him to keep the policy. Mahbod says he showed the First Variable illustration to him. Mahbod stated that at that time he trusted Ebrahimi and believed that New York Life was at fault. Consequently, he did not believe the representatives of New York Life when they assured him that the First Variable policy would not be paid up in five years.
In Mr. McGovern's deposition, he states that he worked for New York Life and went with another agent to speak to Mahbod in an attempt to save the policy for New York Life. Mr. McGovern explained that a sales tool used in the sale of a variable life policy is a hypothetical illustration *94 to show potential cash values and death benefits in the future, although he did not have the specific illustration given Mahbod. He could not recall a discussion about whether Mahbod was a smoker.
In support of his position that there are material facts at issue preventing summary judgment, Mahbod presented affidavits from other clients of Ebrahimi stating that she made misrepresentations to them. Mahbod asserts that his signature was obtained fraudulently on the application for the New York Life policy by a "bait and switch" scheme engaged in by Ebrahimi with New York Life's knowledge and approval. Mahbod also argues that his decision to cancel the New York Life policy in 2000 was because of fraudulent representations by Ebrahimi, in a "bait and switch" plan of which New York Life had knowledge.
The documents presented by New York Life and Mr. Mahbod's own testimony do not support his arguments. The terms of the New York Life policy are clear and give no indication that the premiums would discontinue in five years. Mahbod admits his signature is on the receipt of the policy. Assuming Ebrahimi did make that false representation before the application was made and the policy issued, Mahbod is deemed to know when it was issued that the correct terms of the policy did not include a paid-up policy in five years. Further, he accepted the policy as written and held it for about one year before surrendering it for the cash value.
Further, we find no merit in plaintiff's claim that questions of material fact remain regarding the representations made in 2000 that caused him to surrender the New York Life policy for its cash value and replace it with the First Life policy. By plaintiff's own admission, Ebrahimi had become disenchanted with New York Life and no longer represented the company at that point. Thus, any allegations of fraud regarding this transaction can not be imputed to New York Life, and cannot prevent the grant of summary judgment as to that party.
Mahbod asserts that knowledge of Ms. Ebrahimi's "bait and switch" plan can be imputed to New York Life. In support of that assertion, Mahbod offers three affidavits from other clients who claim to have been defrauded by the same scheme. Two of the affidavits, by Muntadhir Hussan and Victor Sadvani, show knowledge by the affiants of the false representations in 2004 and 2003, and therefore will not serve to impute knowledge by New York Life of the scheme in 2000, which is when Mahbod discovered the alleged misrepresentation. The remaining affidavit presented by Mahbod, which would indicate that New York Life knew of Ebrahimi's false representations by 2000, is unsigned and cannot by used to support the conclusion that New York Life knew of Ebrahimi's actions.
Thus, we find the trial court was correct in finding no material issue of fact remained to be decided regarding the issuance of the New York Life policy and was correct in granting summary judgment.
For the foregoing reasons, we affirm the judgment of the trial court and remand the matter for further proceedings.
AFFIRMED; MATTER REMANDED.