974 So.2d 713 (2007)
GOES IRON WORKS L.L.C., Craig D. Roes, and Lynn Boes
v.
Craig GALATAS and Mark Heller.
No. 07-CA-336.
Court of Appeal of Louisiana, Fifth Circuit.
December 11, 2007.
*714 Piercy J. Stakelum, III, David R. Sherman, Paola P. Corrada, Attorneys at Law, Metairie, LA, for Plaintiff/Appellant.
George J. Denegre, Jr., John C. Anjier, Attorneys at Law, New Orleans, LA, for Defendant/Appellee.
Panel composed of Judges THOMAS F. DALEY, CLARENCE E. McMANUS, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
Plaintiffs, Boes Iron Works, L.L.C., and its owners, Craig Boes and Lynn Boes, appeal a judgment of the trial court which granted a defense motion of peremption *715 pursuant to La. R.S. 9:5606 and dismissed their claim with prejudice.
In a petition for damages and declaratory judgment, the plaintiffs made claims against Craig Galatas and Mark Heller for recission for fraud, negligent and intentional misrepresentation, and breach of fiduciary duty. In the petition, the plaintiffs claim that defendant, Craig Galatas, represented himself as being an expert in financial planning and a securities broker. Galatas introduced plaintiff, Craig Boes to defendant, Mark Heller. According to the petition, the defendants convinced Craig Boes to purchase two variable life insurance policies as retirement investments telling him that, because the two policies would be maintained with a multi-employer welfare benefit plan in which Boes Iron Works L.L.C. would participate, the premiums would be tax-free. The defendants represented that the pan was authorized by Section 419 of the United States Internal Revenue Code, and would allow the plaintiffs to invest in the life insurance policies with pre-tax dollars.
The plaintiffs maintain that the information and assurances given by the defendants in their capacity as security brokers and financial experts was incorrect and as a result, the Internal Revenue Service (IRS) disallowed the deduction. This caused the plaintiffs to have a significant and unexpected tax liability, including penalties. The plaintiffs assert in their petition that the defendants knew the insurance policies did not qualify as taxsheltered investments under Section 419, and undertook a variety of actions after the sale designed to conceal their wrongful practices from the plaintiffs.
Defendants filed exceptions of no cause of action and peremption, arguing that the allegations in plaintiffs' action were preempted by the three-year period set forth in La. R.S: 9.5606 for actions against insurance agents. After a hearing on die matter, the trial court rendered judgment in favor of the defendants which granted the exception of peremption and dismissed the plaintiffs' suit. It is that judgment from which the plaintiffs appeal.
Testimony and documents contained in the record show that Craig Boes and his wife, Lynn, are the sole owners of Boes Iron Works, L.L.C., a small business that owns heavy equipment usually leased to Boes Iron Works, Inc., a company owned by Mr. Boes' mother.
In 2001, Mr. Boes consulted Craig Galatas, who had been recommended by a friend, to get financial advice. Specifically, Mr. Boes, who was forty-seven years old at the time, wished to create a retirement plan which would allow him to retire in five years with a monthly income of $10,000.00 after taxes. At the time, Mr. Boes had an annual income of about 1.5 million dollars, $500.000.00 in municipal bonds, 65,000.00 in other retirement plans and 2.5 million dollars in real estate. His only debt was about $100,000.00 in mortgages.
Mr. Galatas collected financial information from Mr. Hoes and ultimately calculated that Mr. Boes would have to invest $450,000.00 per year in order to achieve his goal. Mr. Galatas introduced Mr. Boes to Mark Heller, a financial advisor who had special knowledge of Section 419 of the Internal Revenue Code that provided for tax sheltered employer-sponsored welfare plans.
Mr. Heller explained in his testimony that it would cost Mr. Boes' company $750,000.00 in additional annual compensation to Mr. Boes to allow him to net $450,000.00. Under a plan in compliance with Section 419, the company could pay $450,000.00 in life insurance premiums for Mr. and Mrs. Boes as employees, with a tax deduction to the company of about 90% *716 of the premiums, thus providing a considerable savings to Mr. Boes' company.
In testimony at trial the parties agreed on many of the facts. Mr. Boes, Mr. Heller and Mr. Galatas all agreed that they met and discussed Mr. Boes' goal and the plan to implement it. All parties also agree that at one of these meetings, Philip Bennett, Mr. Boes' accountant was present. Mr. Bennett also attended a separate meeting with Mr. Galatas and Mr. Heller.
After these meetings, Mr. Boes signed an Advantage Death Benefit Only Plan sponsored by BISYS, a publicly traded multi-national insurance brokerage and consulting firm. On January 17, 2002, in connection with the document, Mr. Boes also signed an "Adoption Agreement" stating that the intent of the plan was to comply with Section 419A(f)(6) of the Internal Revenue Code and would be funded with variable universal life insurance policies providing death only benefits to each employee (Mr. and Mrs. noes) in the amount of about 14,000,000.00.
In February of 2002, Mr. Galatas met with Mr. and Mrs. Boes to show them a prospectus and illustration of the Manulife Financial variable life insurance policies to be used to fund the plan. The Boes agreed to the policies which were issued on March 11, 2002, and delivered on March 12, 2002. The face value of each policy was $13,986,535.00 with annual premiums of $450,210.00 for both.
Later that year, BISYS offered "audit" insurance to provide coverage for tax liabilities and related expenses owed in the event the deduction for the 419 plan was disallowed by the IRS. Mr. Boes elected to participate in the program on October 29, 2002.
On September 15, 2003 BISYS notified Mr. Boes that it was terminating all 419 plans, including the one written for Boes Iron Works, L.L.C. on advice of legal counsel after final regulations released by the IRS suggested the deduction for the plan may be disallowed.
On January 17, 2004, Mr. Boes adopted a new plan administered by Arrowhead Trust for Cronin, and funded it with the same Manulife Financial policies. This plan replaced the one originally written by BISYS. It differed only in the fact that it was not a multi-employer plan.
A tax deduction for 2002 was taken under the program. However, in April of 2004, Philip Bennett, Mr. Boes' accountant informed him that the deduction could not be taken for the tax year of 2003. After consultation with a second accountant provided the same assessment, Mr. Boes filed suit against Mr. Galatas and Mr. Heller on March 5, 2005 alleging that the defendants misrepresented and concealed material facts relating to the true risk of the 419 plans. It is also alleged that the defendants failed to disclose the true nature of the variable life insurance policies. The plaintiffs further allege fraud and breach of fiduciary duty.
While the parties agree on the sequence of events and the execution of the documents in question, the parties do not agree as to the specifies discussed at the meetings before the adoption of the plan. Mr. Heller testified that there were risks associated with the 419 plan. Besides the normal risks of any investment, the 419 plans were under attack by the IRS and the tax deductions could be disallowed. Mr. Heller stated that he repeatedly warned Mr. Boes of that risk in the first and subsequent meetings. The three discussed whether it was worth the risk even if the deductions were only allowed for a year or two. Ultimately, Mr. Heller and Mr. Galatas told Mr. Boes that neither of them was a tax advisor, and that Mr. Boes *717 should consult his own tax expert before making the decision.
Mr. Heller testified that Mr. Boes' accountant, Philip Bennett, was consulted regarding the decision and was informed of the risks by both Mr. Heller and Mr. Galatas. Mr. Heller testified that he and Mr. Galatas had two meetings with Mr. Bennett and that Mr. Boes was involved in the second meeting. At these meetings Mr. Bennett was supplied with documents, diagrams and booklets explaining how the plan worked and how the deductions were calculated. According to Mr. Heller's testimony, Mr. Boes and Mr. Bennett were satisfied that the deduction for the plan was allowable under the Internal Revenue Code and Mr. Boes decided to adopt the 419 plan.
Mr. Galatas' testimony is consistent with that of Mr. Heller. Mr. Galatas testified that Mr. Boes was told often of the risk that the deduction would be disallowed by the IRS and that he should take that into consideration. Mr. Galatas also testified that BISYS offered an audit insurance policy in the fall of 2002 because of the uncertainty of the status of the 419 deduction. Mr. Boes was again advised of the risk and elected in writing to acquire the insurance as a precaution.
Boes acknowledged that he met with Mr. Galatas and Mr. Heller on several occasions and that his accountant, Mr. Bennett was included in two of the meetings. He stated that Philip Bennett was the accountant who did his personal and company tax returns, but denied that Mr. Bennett was his tax advisor. He considered defendants to be his tax advisors.
Mr. Boes further admitted that he signed and initialed all paperwork and documents, and makes no accusation that he was not given the opportunity to review any document before its execution. His testimony is that he was only focused on his goal of securing a retirement plan that would enable him to retire in five years with $10,000.00 after taxes per month. Mr. Boes testified that his wife was not involved in the decision making on this transaction.
He testified that he consulted Mr. Galatas, who introduced him to Mr. Heller, and that the two men gained his trust. Mr. Boes considered the two men his professional financial advisors and trusted them to make the right decisions to see that his goal was met. Mr. Boes denies he was ever advised of any risk as to any aspect of the plan. He stated that he is not an experienced investor and is conservative by nature. Succinctly, Mr. Boes testified that he trusted the defendants completely and did not read anything before he signed it. He was emphatic in his testimony that no risk was discussed with him, and that he had no indication that anything was amiss until Mr. Bennett informed him in April of 2004 that a tax deduction for 2003 was not possible.
On cross-examination Mr. Boes was confronted with conflicts between his trial testimony and his prior deposition testimony. Mr. Boes admitted the plan was attractive to him because of the tax deduction, and that there "probably" was some discussion about aggressive tax strategy. Mr. Boes conceded that Mr. Galatas presented the plan as being in the "gray area" of tax law. Mr. Boes also admitted that he could have sat down to read the documents, but didn't take the time.
Mr. Boes admitted he purchased audit insurance to protect against monetary loss in the event the IRS disallowed the deduction. He further admitted he understood the coverage. However, he stated that he thought the insurance was mandatory, and since the premium was relatively low, he *718 thought the risk of the loss of the deduction was also.
He acknowledged that he got several documents relating to the insurance policies and the 419 plans, but he simply put them in a file, often unopened. He testified that Mr. Galatas was his trusted financial advisor and he thought Mr. Galatas would do the right thing.
One of the most pertinent parts of Mr. Boes testimony in his deposition is that when he received the letter from BISYS canceling the plan in September, 2003, he thought the plan was "smoke and mirrors." According to the testimony of Mr. Galatas and Mr. Heller, at the time the BISYS plan was cancelled there was a discussion among the three men on how to proceed. Mr. Boes was offered three options. He could cash in the two life insurance policies, continue to pay the premiums with after tax dollars, or try to move the policies into a new plan. Both Mr. Galatas and Mr. Heller testified that, aside from setting up the retirement planning, Mr. Boes was interested in aggressive tax strategy. Ultimately, Mr. Boes decided to move the policy into a new plan.
Mr. Boes testified that when the first plan was cancelled, he only understood that a new company would be administering the program. He was not told of the risk or the problems with the plan.
LAW AND ANALYSIS
The only issue presented for our review is one of preemption. The law used by the trial court in finding the plaintiffs' action preempted is La. R.S. 9:5606, which provides as follows;
A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of. engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
C. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.
D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended
With the enactment of La. R.S. 9:5606, the legislature has imposed a one-year prescriptive limitation on actions against insurance agents, brokers and solicitors, and it has also put a three-year peremptive limit on these actions. Thus, if a claim of negligence is not filed within three years of the alleged act, it is extinguished by peremption, regardless of whether or not it was filed within the one-year limitation period. Huffman v. Goodman, 34,361 (La.App. 2 Cir. 4/4/01), 784 So.2d 718, writ denied, XXXX-XXXX (La.6/22/01), 794 So.2d 791.
As this, court has noted, peremption differs from prescription in several respects. Although prescription prevents the enforcement of a right by legal *719 action, it does not terminate the natural obligation (La.C.C. art. 1762(1)); peremption, however, extinguishes or destroys the right (La.C.C. art. 3458). Public policy requires that rights to which peremptive periods attach are to be extinguished after passage of a specified period. Accordingly, nothing may interfere with the running of a peremptive period. It may not be interrupted or suspended; nor is there provision for its renunciation. And exceptions such as contra non valentem are not applicable. Biggers v. Allstate Ins. Co., 04-282 (La.App. 5 Cir. 10/26/04), 886 So.2d 1179,1180.
Generally, the burden of proving a suit has prescribed rests with the party pleading prescription. However, when the plaintiff's petition shows on its face that the prescriptive period has run, and the plaintiff relies on a suspension or interruption of prescription, the burden is on the plaintiff to prove the suspension or interruption. Tuazon v. Eisenhardt, 98-666 (La.App. 5 Cir. 12/16/98), 725 So.2d 553, 555; writ denied, XXXX-XXXX (La.3/12/99), 739 So.2d 209.
On appeal plaintiffs assert that the trial court erred in applying R.S. 9:5606, which sets forth the peremptive period for insurance agents. Plaintiffs argue the defendants are licensed security brokers who specialize in financial planning for high net worth individuals and small, closely held businesses. While they also hold insurance agent licenses, and the two policies of insurance here were used as a means to fund the retirement plan, these defendants acted as security brokers in this transaction. Plaintiffs also point out that the policies were variable life insurance policies, securities subject to federal and state securities laws. Commissions received by defendants were treated as securities commissions and were paid through InterSecurties, Inc., the registered broker-dealer through whom the defendant held their security licenses.
Accordingly, the plaintiffs ask this court to apply the two-year prescriptive period of the Louisiana Securities Law, La. R.S. 51:701, et seq., also known as the "Blue Sky Law", rather than La. R.S. 9:5606.
We are not persuaded by plaintiffs' argument. Funding of retirement plans with life insurance is not a novel concept. Variable life insurance policies are included in statutes regulating insurance law. See: La. R.S 22:1500. Further, in analyzing the law relating to variable insurance policies, the courts of Louisiana have applied insurance law, including the peremptive periods of La. R.S. 9:5606. See: Mahbod v. Ebrahimi, 06-235 (La.App. 5 Cir. 11/28/06), 947 So.2d 90; Shermohmad v. Ebrahimi, 06-512 (La.App. 5 Cir. 10/31/06), 945 So.2d 119. Accordingly, we find this matter should be resolved using La. R.S. 9:5606.
The issue in Shermohmad was directly related to the alleged misrepresentation regarding the performance of the variable life insurance policy, rather than the tax treatment of the premiums. Although the plaintiffs in the matter before us make an allegation in the original petition that there were misrepresentations regarding the performance of the life insurance policies, their arguments at the hearing relate to the issue of the tax treatment of the premiums. Therefore, we recognize Shemohmad can be distinguished on the facts. Nevertheless, we find Shermohmad instructive regarding the issue of prescription.
Prescription on variable life insurance policies begins to run on the delivery date of the policy. Shermohmad v. Ebrahimi, supra. The BISYS plan was adopted by the Boes in January of 2002. *720 The policies used to fund the plan were delivered in March of 2002. Thus, any cause of action derived from the insurance policies would have prescribed in March of 2003. This suit was not filed until March of 2005.
Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. Campo v. Correct, 2001-2707 (La.6/21/02), 828 So.2d 502, 510. Constructive knowledge is whatever notice is sufficient to excite the attention of the injured party and which puts the party on notice that an inquiry is necessary. In Re Medical Review Panel of Lafayette, 03-457 (La.App. 5 Cir. 10/15/03), 860 So.2d 86.
The record before this court shows that the Boes had several incidents that would serve to "excite the attention." On January 17, 2002, Mr. Boes signed the agreement to set up the Advantage DBO Plan. The first attempt to secure life insurance policies to fund the program was not successful because the application was not accepted by the insurance company underwriters. However, in the paperwork regarding that transaction is a signed disclosure acknowledgement clearly setting forth the risks of which Mr. Boes asserts he was not informed. Ultimately, the policies were written through Manufacturers Life Insurance Company (Manulife). When the policies were written, a disclosure and acknowledgement was signed by Mr. Boes That document was executed on March 27, 2002 and provides:
Manulife, while acknowledging the assignments, makes no representation to the Employer or to any other person regarding the federal and state tax consequences of adopting or participating in the Plan. Specifically (without limiting the generality of the preceding sentence), Manulife makes no representations as to (1) whether deductions will be currently allowed for amounts contributed to the Trustee under the Plan, (2) whether the Plan's method for computing the Employer's annual contributions under the Plan yields correct or appropriate results, (3) whether the Plan results in impermissible experience rating or creation of segregated accounts for purposes of section 419A(f)(6) of the Internal Revenue Code
Further, BISYS notified Mr. Boes on March 24, 2003 that a Fiduciary Audit Insurance Protection Program was available to cover losses in tile event the IRS disallowed the deduction for the insurance premiums. Mr. Boes elected to purchase this coverage soon afterward.
The documents contained in the record set forth all the risks Mr. Boes asserts were not explained to him, and his signature and initials are on all of the documents. By Mr. Bees' own testimony, he executed all of the documents and could have made the choice to read them. His choice, however, was to allow Mr. Galatas and Mr. Heller to prepare the paperwork and make the decisions. Further, Mr. Boes ultimately admitted that he was warned the 419 plan involved a gray area of tax law and took out audit insurance to be certain he did not suffer any monetary loss should the IRS disallow the deduction for the plan.
Mr. Boes knew from the start that 419 plans were gray areas of the tax code. At the very latest, Mr. Bees knew or should have known there was a problem in September of 2003, when he described the plan as "smoke and mirrors." We find the trial court applied the applicable law to this case, and that prescription began to run in September of 2003.
Plaintiffs' second argument is that the trial court erred in holding that *721 the fraud exception is inapplicable to this action. One exception to the limitations of actions is an action in fraud. However, the fraud exception only applies to the one-year prescriptive period. Biggers v. Allstate Ins. Co., supra. This is consistent with the general concept that actions that are preempted are extinguished.
In finding that the fraud exception does not apply, the trial court stated, "(t)o the extent the Plaintiffs characterized their claims as sounding in fraud, that cannot establish reasonable reliance as a matter of law because the alleged misrepresentations were contradicted by the terms of written documents they received and executed." Given the documentation presented in the matter before us, we find that to be a correct finding by the trial court.
Plaintiff also argues that prescription should begin to run on April 4, 2004 when Arrowhead Trust took over as trustee of the plan. We find no merit in this argument. The new plan was for the same purpose as the original, and the original life insurance policies were still the funding mechanism of the plan. At any rate, this event took place well after Mr. Boes had notice that such a plan funded by variable life insurance was not likely to be tax deductible to his company, and purchased insurance to cover any losses should that event occur.
After a complete review, of the record in the matter including the documents and testimony, we find the trial court correctly ruled on the merits of the exception of peremption. It is clear from the reasons for judgment that the trial court considered the evidence, and the, credibility of the parties.
Mr. Boes tries to portray the defendants as professionals holding a fiduciary duty who misrepresented the tax consequences of the transactions for profit. However, we believe the trial court was correct in its observation that Mr. Boes is an experienced business man, Mr. Foes testimony that he simply trusted the defendants, signed when and where he was told without reading any documents is insufficient to prove his allegations against the defendants, especially in view of the documentation contained in the record.
We find it telling that Mr. Boes purchased the audit insurance to protect against financial loss if the IRS disallowed the deduction. Yet, his arguments to this court relating to the exception are based primarily on fraud relating to the misrepresentations made by the defendants regarding the tax aspects of the plan.
In conclusion, we find the trial court was correct. The overwhelming evidence presented at the hearing on the exception of prescription/peremption shows no evidence of fraud, misrepresentation or concealment in the actions of the defendants.
Accordingly, we find no merit in plaintiffs' arguments and affirm the judgment of the trial court for the reasons discussed herein.
AFFIRMED.