STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2021 CA 1535

APRIL MARKIEWICZ, WIFE OF/AND MARK MARKIEWICZ

VERSUS

SUN CONSTRUCTION, L.L.C., PENN MILL LAKES, L.L.C., AND COOPER
ENGINEERING, INC., A PROFESSIONAL ENGINEERING CORPORATION

*consolidated with*

NO. 2021 CA 1536

JANET SHEA, WIFE OF/AND ALPHONSE SHEA

VERSUS

SUN CONSTRUCTION, L.L.C.; SUNRISE CONSTRUCTION AND
DEVELOPMENT, L.L.C.; PENN MILL LAKES, L.L.C.; COOPER
ENGINEERING, INC., A PROFESSIONAL ENGINEERING CORPORATION

*consolidated with*

NO. 2021 CA 1537

PATRICIA GRANT, WIFE OF/AND RICHARD GRANT; ET AL.,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED

VERSUS

SUN CONSTRUCTION, L.L.C., PENN MILL LAKES, L.L.C., SUNRISE
CONSTRUCTION AND DEVELOPMENT, L.L.C., AND COOPER
ENGINEERING, INC., A PROFESSIONAL ENGINEERING CORPORATION

Judgment Rendered: **JUN 1 4 2022**

* * * * *

On Appeal from the
22nd Judicial District Court
Parish of St. Tammany, State of Louisiana
Trial Court No. 2006-16084 c/w 2008-10737 c/w 2008-11536

The Honorable Reginald T. Badeaux, III, Judge Presiding

McDonald, J. - dissents and assigns reasons.

* * * * *

Maurice Le Gardeur
Covington, Louisiana
*and*
Adam S. Lambert
New Orleans, Louisiana

Attorneys for Plaintiffs/Appellants,
Patricia Grant, Individually and as
Independent Executrix of the Succession
of Richard Grant, Sheron Sprawls, Vernon
Sprawls, Dianne White, Johnny White,
Joann Youngblood, William Youngblood,
Lynell Rowan, Alvin Rowan, Gayle Ayo,
James Ayo, Susan Casey, Janet Shea,
Alphonse Shea, and Penn Mill Lakes
Homeowners Association, Inc.


J. Scott Loeb
Cynthia M. Bologna
Jonas P. Baker
Mandeville, Louisiana

Attorneys for Defendants/Appellees,
Sun Construction, LLC, Lawrence A.
Kornman, and Penn Mill Lakes, LLC

* * * * *

BEFORE: McDONALD, LANIER, AND WOLFE, JJ.

**WOLFE, J.**

The plaintiffs appeal the trial court's March 30, 2021 judgment, which granted, in part, the motion for partial summary judgment filed by defendants, Sun Construction, LLC, Penn Mill Lakes, LLC, and Lawrence A. Kornman (collectively "the developer defendants"), and dismissed with prejudice plaintiffs' claims against the developer defendants for fraud and conspiracy to defraud. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

This putative class action arises out of three consolidated lawsuits brought by homeowners in Penn Mill Lakes Subdivision ("the Subdivision") in St. Tammany Parish, alleging defects in the design and construction of the drainage system of the Subdivision and seeking to recover damages from flooding allegedly caused by these defects.

April and Mark Markiewicz filed suit on December 8, 2006, and Janet and Alphonse Shea filed suit on February 8, 2008, asserting claims under the New Home Warranty Act, La. R.S. 9:3141, *et seq.*, and alleging that the defective design, construction, and planning of the drainage system causes their driveways to flood during inclement weather, which impedes access to, and egress from, their homes.[1] Thereafter, on March 20, 2008, Patricia Grant, Richard Grant, Marguerite Guarino, William Guarino, Sheron Sprawls, Vernon Sprawls, Dianne White, Johnny White, Jo Ann Youngblood, William Youngblood, Lynell Rowan, Alvin Rowan, Gayle Ayo, James Ayo, Deborah Lascari and Daniel Lascari filed a class action petition, individually and on behalf of all others similarly situated. In that petition, plaintiffs named as defendants Sun Construction, LLC ("Sun"), the general contractor/builder of the Subdivision; Penn Mill Lakes, LLC ("Penn Mill

---

[1] The Sheas alternatively alleged claims in negligence, strict liability, and nuisance.

Lakes"), one of the developers of the Subdivision; and Cooper Engineering, Inc., A Professional Engineering Corporation ("Cooper Engineering"), the engineering firm responsible for the design of the drainage system in the Subdivision.[2] Plaintiffs asserted claims in negligence, strict liability, and nuisance, and also alleged that the drainage system utilized throughout the Subdivision was defective in design and as constructed and installed. Plaintiffs further alleged Sun, Penn Mill Lakes, and Cooper Engineering committed fraud and a conspiracy to defraud by failing to advise plaintiffs that their driveways were components of the Subdivision drainage system, and by promising to repair the drainage system, but then refusing to do so, thereby discouraging plaintiffs from the prompt exercise of their rights. The three lawsuits were ultimately consolidated by judgments dated January 6, 2009.

Through amended class action petitions, plaintiffs named as defendants various other individuals and entities allegedly involved in the design and construction of the drainage system in the Subdivision, and their insurers. As is relevant to the instant matter, on September 4, 2013, plaintiffs filed a second amended class action petition, adding Leroy J. Cooper, the former owner of Cooper Engineering, and the St. Tammany Parish Government ("STPG") as party defendants.[3] In that petition, plaintiffs asserted additional fraud and conspiracy claims, specifically alleging Sun, Penn Mill Lakes, Cooper Engineering, and Cooper knew Cooper's hydrolysis studies and other design submissions contained false and misleading parameters and assumptions, and failed to disclose or take into consideration the location of the Subdivision within the Little Tchefuncte

---

[2] Plaintiffs also named as a defendant Sunrise Construction and Development, LLC ("Sunrise"), another developer of the Subdivision. On December 21, 2011, the trial court granted a motion for summary judgment filed by Sunrise and dismissed plaintiffs' claims against it with prejudice.

[3] On January 8, 2015, the trial court signed an order of partial dismissal, which dismissed with prejudice plaintiffs' claims against Cooper and Cooper Engineering pursuant to a compromise between the parties.

4

River/Horse Branch flood basin. Plaintiffs alleged these defendants conspired together to keep this information from the STPG, and that they knew the Subdivision would "backflood" considering its location in a flood basin.

In their third amended class action petition, filed on June 13, 2014, plaintiffs named as defendants Lawrence A. Kornman, the manager of Sun and Penn Mill Lakes; James A. "Red" Thompson, the St. Tammany Parish Councilman for the geographic area that includes the Subdivision; and Jean M. Thibodeaux, P.E., the St. Tammany Parish Director of Engineering and Parish Engineer at the time the developer defendants were seeking approval of their initial applications for development of the Subdivision. Plaintiffs alleged in their third amended class action petition that the developer defendants, along with Thompson and Thibodeaux, engaged in fraud and a conspiracy because they knew the Subdivision applications and submissions by the developer defendants contained false and misleading information and failed to take into consideration the location of the proposed subdivision within the Little Tchefuncte River/Horse Branch flood basin. Plaintiffs alleged the developer defendants, Thompson, and Thibodeaux were aware flood protection measures were needed in order to comply with St. Tammany Parish Flood Hazard Area Ordinance, Parish Ordinance Sec. 7-016.00, *et seq.* (sometimes referred to as "the flood ordinances") and St. Tammany Parish Subdivision Regulations, Ordinance Number 499 (Appendix B, Chapter 40) (sometimes referred to as "Subdivision Ordinance 499"). Plaintiffs further alleged the developer defendants, Thompson, and Thibodeaux conspired together to withhold from the STPG information regarding the potential for flooding of the Subdivision in order to obtain permits to develop the Subdivision.

On February 12, 2016, plaintiffs filed a fourth amended class action petition, adding Penn Mill Lakes Homeowners Association, Inc. ("the HOA") and Susan Casey as plaintiffs, and adding John E. Bonneau and John E. Bonneau &

5

Associates, Inc. as additional defendants. Plaintiffs alleged John E. Bonneau, a professional land surveyor associated with and working for John E. Bonneau & Associates, Inc. (sometimes collectively referred to as "the Bonneau defendants") provided and have continued to provide professional surveying services on behalf of the developer defendants, including preparing elevation certificates that were provided to homeowners during the sales process. Plaintiffs alleged that no later than 2009, the Bonneau defendants had actual or constructive knowledge that the initial elevations taken in the Subdivision were significantly incorrect. Plaintiffs alleged the Bonneau defendants acted in concert with the developer defendants to provide homeowners with incorrect elevation certificates, actions plaintiffs asserted amounted to fraud and an ongoing violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. R.S. 51:1401, *et seq.*

On June 8, 2018, the STPG, Thompson, and Thibodeaux (collectively "the STPG defendants"), filed a motion for summary judgment arguing they were entitled to discretionary immunity, in accordance with La. R.S. 9:2798.1, and seeking dismissal of plaintiffs' claims against them for approving the Subdivision and issuing permits, as well as their claims for fraud, conspiracy, and unfair trade practices. The trial court signed an amended[4] judgment on June 17, 2020, granting the STPG defendants' motion for summary judgment, and plaintiffs appealed that judgment.[5] See **Markiewicz v. Sun Construction, L.L.C.**, 2020-1211 (La. App.

---

[4] The trial court signed an original judgment granting the STPG defendants' motion for summary judgment on February 14, 2019, which the plaintiffs appealed. However, that appeal was dismissed for lack of jurisdiction because the original judgment lacked appropriate decretal language and could not be considered a final judgment for purposes of appeal. See **Markiewicz v. Sun Construction, L.L.C.**, 2019-0869 (La. App. 1st Cir. 5/28/20), 304 So.3d 877, 880-881.

[5] Plaintiffs also appealed the portion of the trial court's June 17, 2020 written judgment denying a motion for partial summary judgment filed by plaintiffs, and granting a cross-motion for partial summary judgment filed by the STPG, and declaring that the HOA owns the drainage ponds/lakes in the Subdivision and is responsible for the operation and maintenance of the drainage ponds/lakes. See **Markiewicz**, 328 So.3d at 493. This court affirmed the trial court's June 17, 2020 judgment insofar as it denied plaintiffs' motion for partial summary judgment, and granted the STPG's cross-motion for partial summary judgment declaring the HOA owns the drainage ponds/lakes. **Id.** at 502. However, this court determined genuine issues of material

6

1st Cir. 6/22/21), 328 So.3d 487, writ granted, cause remanded, 2021-01073 (La. 11/23/21), 328 So.3d 66, and writ denied, 2021-01071 (La. 11/23/21), 328 So.3d 80. On appeal, this court noted plaintiffs had alleged in their third amended class action petition that the STPG defendants approved the Subdivision and issued building permits, even though the STPG defendants allegedly knew that the flood ordinances and Subdivision Ordinance 499 had not been complied with. **Id.** at 496. However, this court noted that public entities, their officers, or employees are entitled to discretionary immunity for any actions related to the review of plans, the conducting of inspections, the issuance of building permits, and the approval of construction or other improvements to immovable property, including drainage and flood control facilities, the approval of subdivisions, and the enforcement of building codes. **Id.** at 498. Therefore, although the STPG defendants contended that the developer defendants complied with Subdivision Ordinance 499 and the flood ordinances, this court determined that the STPG defendants were immune from liability as to their discretionary actions, including approving the Subdivision and issuing building permits. **Id.** This court further found plaintiffs failed to establish a genuine issue of material fact to support their claims of fraud or conspiracy, and specifically noted the STPG defendants had provided deposition

---

fact existed regarding whether the STPG is responsible for the operation and maintenance of the drainage ponds/lakes; therefore, this court concluded that the trial court erred by granting the STPG's cross-motion for partial summary judgment to the extent it declared that the HOA is responsible for the operation and maintenance of the drainage ponds/lakes. **Markiewicz,** 328 So.3d at 502-03. Plaintiffs sought writs with the Louisiana Supreme Court, which granted plaintiffs' writ application, in part, and remanded the matter to this court "solely to clarify whether it intended to affirm the trial court's ruling granting St. Tammany Parish Government's motion for summary judgment on the issue of discretionary immunity as to all defendants, including St. Tammany Parish Government." The Louisiana Supreme Court denied plaintiffs' writ application "[i]n all other respects[.]" **Markiewicz v. Sun Construction, L.L.C.,** 2021-01073 (La. 11/23/21), 328 So.3d 66, 67 (per curiam). On March 23, 2022, this court issued an opinion in accordance with the Louisiana Supreme Court's remand instructions, and clarified that this court's prior opinion determined the STPG was entitled to discretionary immunity as to its approval of the Subdivision, the enforcement and non-enforcement of subdivision and flooding ordinances, and the issuance of building permits, but was not entitled to summary judgment dismissal of plaintiffs' claims regarding STPG's alleged responsibility for maintaining the drainage ponds/lakes and/or drainage system/servitude. **Markiewicz v. Sun Construction, L.L.C.,** 2020 CA 2011R (La. App. 1st Cir. 3/23/22) ___ So.3d ___, ___, 2022 WL 1235370, *3.

7

testimony from plaintiffs and the HOA representative, wherein each testified they had no knowledge or evidence that the STPG defendants had engaged in fraud, a conspiracy, or an unfair trade practice. **Id.** at 499-500. Accordingly, this court affirmed the trial court's judgment insofar as it granted the STPG defendants' motion for summary judgment and dismissed plaintiffs' claims against the STPG defendants relative to the approval of the Subdivision and issuance of permits, as well as plaintiffs' claims of conspiracy, fraud, and unfair trade practices. **Id.** at 499, 503.

Meanwhile, the Bonneau defendants filed a motion for summary judgment, arguing plaintiffs' non-fraud claims against them, except those of Casey, were perempted pursuant to La. R.S. 9:5607, and asserting plaintiffs could not establish the essential elements of their fraud claims. On June 11, 2019, the trial court signed a judgment granting, in part, the Bonneau defendants' motion for summary judgment and dismissing with prejudice the claims of plaintiffs, except Casey, against the Bonneau defendants. Plaintiffs appealed that judgment, which is the subject of our prior opinion, **Markiewicz v. Sun Construction, L.L.C.,** 2019-1590 (La. App. 1st Cir. 9/18/20) 2020 WL 5587265 (unpublished), writ denied, 2020-01196 (La. 1/12/21), 308 So.3d 714. On appeal, this court affirmed the trial court's June 11, 2019 judgment, finding plaintiffs' non-fraud claims, with the exception of Casey's, were perempted pursuant to La. R.S. 9:5607. **Id.** at *5. As to plaintiffs' fraud claims, which fell outside the purview of La. R.S. 9:5607, this court found plaintiffs failed to produce factual support sufficient to establish the existence of a genuine issue of material fact as to any fraudulent misrepresentations by the Bonneau defendants, explaining, in relevant part:

> On review, we note that while factual disputes exist as to whether Bonneau's measurements were erroneous, plaintiffs offered no factual support sufficient to establish the existence of a genuine issue of material fact as to whether the Bonneau defendants were aware of any discrepancy or alleged error at the time they completed the

8

surveys at issue or as to whether the Bonneau defendants knowingly misrepresented the elevations, or suppressed or omitted true information regarding the surveys they prepared for the lots or property owned by these plaintiffs.

**Id.** at *7.

On November 30, 2020, the developer defendants filed a motion for partial summary judgment seeking dismissal of plaintiffs' claims against them for fraud, conspiracy to defraud, and unfair trade practices. Initially, the developer defendants pointed out that the trial court dismissed plaintiffs' fraud and conspiracy claims against the developer defendants' alleged co-conspirators, the STPG defendants and the Bonneau defendants, and argued the law of the case doctrine therefore required the trial court to also dismiss plaintiffs' fraud and conspiracy claims against the developer defendants.[6] The developer defendants further argued plaintiffs lack the evidentiary support to maintain their claims of fraud, conspiracy to defraud, or unfair trade practices against the developer defendants. In particular, the developer defendants pointed to the attached deposition testimony of plaintiffs, including the representative of the HOA, wherein each stated they had no evidence that the developer defendants failed to comply with any ordinances or laws, or that they engaged in fraud, conspiracy, or unfair trade practices.[7] The developer defendants additionally argued plaintiffs had no evidence to maintain their fraud claims because they had no evidence to show the developer defendants knowingly provided plaintiffs with incorrect

---

[6] The developer defendants attached to their motion for partial summary judgment a copy of the trial court's February 14, 2019 judgment granting the STPG defendants' motion for summary judgment, and related written reasons. The developer defendants also attached the trial court's June 11, 2019 written judgment granting, in part, the Bonneau defendants' motion for summary judgment and dismissing with prejudice plaintiffs' claims (except those of Casey) against the Bonneau defendants.

[7] The named plaintiffs in the putative class action at the time the motion was filed were: Patricia Grant, individually and as Independent Executrix of the Succession of Richard Grant; Gayle and James Ayo; Lynell and Alvin Rowan; Sheron and Vernon Sprawls; Dianne and Johnny White; Jo Ann and William Youngblood; Janet and Alphonse Shea; Susan Casey; and the HOA.

elevation surveys for their respective lots, or that the developer defendants intended to deceive or defraud plaintiffs in connection with the purchase of their homes. The developer defendants further argued plaintiffs lack the right to bring a class action under LUTPA pursuant to La. R.S. 51:1409(A), which expressly prohibits LUTPA claims brought in a representational capacity.

Following a hearing on the motion, the trial court signed a judgment on March 30, 2021, which granted, in part, the developer defendants' motion for partial summary judgment as to plaintiffs' fraud and conspiracy claims, dismissed those claims with prejudice, and denied the motion, in part, as to plaintiffs' LUPTA claims.[8]

From this judgment, plaintiffs appeal, raising three assignments of error challenging the trial court's finding that they failed to set forth sufficient evidence to establish the existence of a genuine issue of material fact as to their fraud and conspiracy claims against the developer defendants and, accordingly, its partial grant of the developer defendants' motion for partial summary judgment.

## LAW AND ANALYSIS

Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. The procedure is favored and shall be construed to accomplish these ends. La. Code Civ. P. art. 966(A)(2). After an opportunity for adequate discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of

---

[8] The March 30, 2021 judgment contains a designation that the judgment is certified as a final judgment for purposes of appeal after a determination that there is no just reason for delay. See La. Code Civ. P. art. 1915(B). Based on our *de novo* review of the matter, we find that the trial court properly certified the judgment as final for purposes of an immediate appeal. See **R.J. Messinger, Inc. v. Rosenblum**, 2004-1664 (La. 3/2/05), 894 So.2d 1113, 1122-1123. We also note that although the March 30, 2021 judgment's decretal language does not individually name the plaintiffs whose claims are dismissed, other language in the judgment adequately identifies them.

law. La. Code Civ. P. art. 966(A)(3). Appellate courts review summary judgments *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. **In re Succession of Beard**, 2013-1717 (La. App. 1st Cir. 6/6/14), 147 So.3d 753, 759-60.

The burden of proof on a motion for summary judgment rests with the mover. La. Code Civ. P. art. 966(D)(1). If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense. Rather, the mover must point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. Code Civ. P. art. 966(D)(1). Although factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, mere conclusory allegations, improbable inferences, and unsupported speculation will not support a finding of a genuine issue of material fact. **Guillory v. The Chimes**, 2017-0479 (La. App. 1st Cir. 12/21/17), 240 So.3d 193, 195.

Although summary judgment is seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge, or malice, summary judgment may be granted on subjective intent issues when no issue of material fact exists concerning the pertinent intent. **Markiewicz**, 2020 WL 5587265, at *7.

Fraud is "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other," and it may also result from silence or inaction,

11

according to La. Civ. Code art. 1953. In order to recover for fraud, the plaintiff bears the burden of proving (1) a misrepresentation of material fact, (2) made with the intent to deceive, and (3) causing justifiable reliance with resultant injury. **Markiewicz**, 328 So.3d at 494, n.9. Specific intent to deceive is a necessary element of fraud, and fraud cannot be based on mistake or negligence, regardless how great. **Lomont v. Bennett**, 2014-2483 (La. 6/30/15), 172 So.3d 620, 634. Moreover, a defendant cannot fraudulently conceal his mistake if he has no knowledge of that mistake. See **Huffman v. Goodman**, 34,361 (La. App. 2d Cir. 4/4/01), 784 So. 2d 718, 726, writ denied, 2001-1331 (La. 6/22/01), 794 So.2d 791. The party asserting a claim of fraud has the burden of proving fraud by a preponderance of the evidence,[9] both direct and circumstantial. La. Civ. Code art. 1957.

The term "conspiracy" generally means a plan by two or more persons to accomplish some unlawful, immoral, criminal, or evil purpose. **Payne v. Stanley**, 53,773 (La. App. 2d Cir. 3/3/21), 316 So. 3d 104, 112, writ denied, 2021-00480 (La. 5/25/21). Louisiana Civil Code article 2324(A) provides "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." Conspiracy by itself, however, is not an actionable claim under Louisiana law. The actionable element of a conspiracy claim is not the conspiracy itself, but rather the underlying tort the conspirators agree to perpetrate and actually commit in whole or in part. **Ross v. Conoco, Inc.**, 2002-0299 (La. 10/15/02), 828 So.2d 546, 552; **Jones v. Americas Insurance Company**, 2016-0904 (La. App. 1st Cir. 8/16/17), 226 So.3d 537, 543. In order to recover under a theory of civil conspiracy, a plaintiff must show that an

---

[9] Regarding plaintiffs' third assignment of error, wherein they contend that the trial court erroneously stated their burden of proof as to a claim for fraud, we reiterate that this court's review of the partial summary judgment is *de novo* with no deference given to the trial court's findings. See **In re Succession of Beard**, 147 So.3d at 759-60.

agreement existed among the defendants to commit the tortious act which caused the plaintiff's injury. The plaintiff must establish that there was an agreement as to the intended outcome or result. **Butz v. Lynch**, 97-2166 (La. App. 1st Cir. 4/8/98), 710 So.2d 1171, 1174, writ denied, 98-1247 (La. 6/19/98), 721 So.2d 473.

Because plaintiffs would bear the burden of proof at trial as to their fraud and conspiracy claims, the developer defendants had the burden on summary judgment to point out the absence of factual support for one or more of the elements of plaintiffs' fraud or conspiracy to defraud claims. La. Code Civ. P. art. 966(D)(1). As discussed, the developer defendants argued in their motion for partial summary judgment that plaintiffs could not meet their burden at trial of proving the developer defendants defrauded plaintiffs, or conspired with any other defendants to defraud plaintiffs, because plaintiffs have testified they have no personal knowledge of a fraud or conspiracy, and there is no evidence to show the developer defendants made a misrepresentation about the elevation of plaintiffs' lots, or intended to deceive plaintiffs with respect to the purchase of their homes.

In their opposition to the developer defendants' motion for partial summary judgment, plaintiffs conceded they have no personal knowledge of a conspiracy or fraud but argued there is substantial evidence to show the developer defendants were involved in a conspiracy and fraud regarding the construction of the Subdivision and its allegedly defective drainage system.[10] In particular, plaintiffs contended sufficient evidence exists that indicates the developer defendants intended, from the outset of the development of the Subdivision, to ignore or

---

[10] Plaintiffs further argued the developer defendants conspired with the STPG in regard to maintenance of the Subdivision's retention ponds/lakes by requiring the HOA, instead of the STPG, to maintain the retention ponds/lakes. However, as discussed, in **Markiewicz**, 328 So.3d at 503, this court found the existence of a genuine issue of material fact as to who is responsible for maintaining the ponds/lakes or the drainage system in the Subdivision, and therefore reversed the trial court's judgment insofar as it granted the cross-motion for summary judgment filed by the STPG and declared the HOA was responsible for maintaining the ponds/lakes in the Subdivision.

13

circumvent the flood ordinances and Subdivision Ordinance 499, by using "illegal fill" and false elevation data to "eliminate" an area in the Subdivision development designated by FEMA as being in Flood Hazard Zone "A," a special flood hazard area. Plaintiffs further contended the developer defendants conspired with the STPG defendants to avoid the flood ordinances and Subdivision Ordinance 499. Plaintiffs also argued the trial court's June 17, 2020 judgment, which granted summary judgment to the STPG defendants on the basis that they had discretion as to enforcement of the flood ordinances and Subdivision Ordinance 499, was in error, and therefore, the law of the case doctrine should not apply. To the contrary, plaintiffs argued the STPG did not have discretion to ignore the flood ordinances and Subdivision Ordinance 499 because those provisions are necessary for the STPG to comply with the National Flood Insurance Program ("NFIP").[11]

In particular, plaintiffs argued the developer defendants conspired with the STPG to stop a hydrological study, recommended by Thibodeaux, which plaintiffs asserted was required by Sec. 7-023.01(9) of the flood ordinances. In support of this argument, plaintiffs attached correspondence between Cooper and Thibodeaux regarding the proposed hydrological study. Specifically, plaintiffs attached a letter, dated March 13, 2003, from Thibodeaux to Cooper, regarding issues Thibodeaux wanted to address prior to an upcoming planning commission meeting for development of the Subdivision. In the letter, Thibodeaux expressed concern "about how the flood zone may cause water to back up into the subdivision and

---

[11] The NFIP was created by the National Flood Insurance Act of 1968, 42 U.S.C. § 4001, *et seq.* The purpose of the NFIP is to provide subsidized flood insurance protection to property owners in flood-prone areas under a national policy promulgated by FEMA. See 42 U.S.C. § 4001, 4011. FEMA is also responsible for managing the NFIP, which includes issuing rules and regulations under the program. 42 U.S.C. § 4011. Federal law prohibits FEMA, as the administrator of the NFIP, from providing flood insurance unless "an appropriate public body shall have adopted adequate land use and control measures" consistent with the National Flood Insurance Act. 42 U.S.C. § 4022(a)(1). To participate in the NFIP, local communities must adopt ordinances and regulations that meet or exceed the criteria. **Ecological Rights Found. v. Fed. Emergency Mgmt. Agency,** 384 F. Supp. 3d 1111, 1116 (N.D. Cal. 2019); 44 C.F.R. § 59.22. If a community participating in the NFIP falls out of compliance with the criteria, it may be suspended from access to federal flood insurance. See 44 C.F.R. § 59.24.

14

affect the flow rates." Thibodeaux further opined that the detention ponds in the Subdivision "may take up to 5 days to drain and may conflict with the peak of the Tchefuncte River." Plaintiffs also attached a letter, dated April 3, 2003, from Thibodeaux to Cooper, wherein Thibodeaux referred to a previous letter from Cooper regarding a proposition to increase "the height of a segment of Penn Mill Road at the location of an unnamed tributary to the Tchefuncte River." Thibodeaux stated that a hydrologic study would be necessary to determine whether the upstream area would be affected by raising the road.

Plaintiffs also attached a letter, dated April 7, 2003, from Cooper to Kornman, wherein Cooper advised that the STPG would likely want a "hydrological study of Horse Branch and perhaps the Tchefuncte River in this vicinity to assure no negative impact and to properly size new culverts." In an email attached by plaintiffs, dated April 24, 2003, Cooper wrote to Kornman, informing him that he had spoken with Thompson and asked him to "get the Parish to back off on detailed Drainage studies if he could." According to Cooper's email, Thompson responded that he would "try to talk them out of [the drainage studies]" and that "he did not want or need a study, he just needed the road raised."

Plaintiffs also argued a July 26, 2002 letter from Kornman to several individuals (apparently comprising the Lake Ramsey Homeowners Association)[12] regarding the development of the Subdivision, and specifically addressing the issue of drainage, evidences the developer defendants' intent to use impermissible fill and inaccurate elevation measurements to eliminate areas on the property previously designated by FEMA as Flood Zone "A." The July 26, 2002 letter,

---

[12] None of the individuals listed on the July 26, 2002 letter are named plaintiffs in this matter. Plaintiffs did not specify whether, or in what capacity, the Lake Ramsey Homeowners Association was involved in the development of the Subdivision.

15

which appears to have also been sent to Thompson and Cooper, states in pertinent part:

> 6.  **Drainage**: The lakes will have a vast amount of storage capacity, well in excess of Parish requirements. The property drains into the 1000 acre conservation area. The vast majority of the property is not in a flood zone. A minor portion of the property is in Flood Zone "A". The Flood Zone "A" may be eliminated either by actual elevations taken on the ground or by the fill generated by the lakes.

Plaintiffs also attached an affidavit by Matthew L. Allen, a certified floodplain administrator. Allen explained that a "Regulatory Flood Hazard Area" is created using elevations of the ground in relation to the "Base Flood Elevation" ("BFE") provided by FEMA. Allen stated that areas defined as Flood Zone "A" on FEMA FIRM panels are "approximations of the Flood Hazard Area for insurance purposes and limited by the scale of the map and available elevation data of the landform at the time the study was produced." Allen further explained that the FEMA FIRM panel used during the approval and construction of the Subdivision was updated in October 1989, and revised in 1999, to reflect updated coastal analysis. In his affidavit, Allen acknowledged the FEMA FIRM panel used for the development of the Subdivision indicates Flood Zone "A" is a "small portion on the west side of the property[.]" However, he opined that more than 60% of the property was actually below BFE based on the Bonneau defendants' predevelopment surveys. Allen further opined that a large section of the property that is in the "regulatory floodplain" was not identified because the developer defendants and the STPG did not apply the flood ordinances to the development process.

According to Allen's affidavit, in 2008, FEMA produced a new flood map, referred to as a Digital Flood Insurance Rate Map ("DFIRM"), which was based on updated topographical data. Allen opined the DFIRM more accurately reflected the floodplain and "closely matched the BFE contours in Bonneau's Original

16

Elevation Studies." Allen identified a "protest" letter attached to his affidavit, dated January 8, 2009, from Cooper to the St. Tammany Parish Flood Plain Manager, wherein Cooper requested the proposed Flood Zone "A" on the proposed FIRM panel for the Subdivision development be changed to either Flood Zone "C" or "Other Area" based on attached survey elevation data from the Subdivision, as existing at the time of the letter. In the protest letter, Cooper stated that "[a]ssuming that FEMA's methodology of calculation of the base flood elevation is correct, all of the land within the Penn Mill Lakes development, as existing, is higher in elevation than the base flood elevations as determined by FEMA in their calculations." In his affidavit, Allen opined that the developer defendants, Cooper, and the St. Tammany Parish Floodplain Administrator, submitted the "fraudulent" protest letter in an attempt to remove the floodplain identified in the DFIRM by "claiming that the entirety of the development was above BFE, despite the Final Drainage and Paving Plats showing otherwise."

Plaintiffs also attached to their opposition an affidavit by J. Anthony Cavell, a licensed professional surveyor, who stated he had completed several elevation surveys within the Subdivision. Cavell explained the FEMA FIRM panel that existed at the time of the design, approval, and construction of the Subdivision was created using NGVD29 vertical datum, the same datum used by Bonneau during his original surveys of the Subdivision. Cavell explained, however, that current instructions from FEMA require the use of NAVD88 datum and, when necessary, conversion to NAVD88 datum using a software program known as "VERTCON." Cavell found, based on his elevation surveys of the Subdivision, all of Bonneau's surveys were between 18 and 22 inches above his elevation measurements. Cavell opined that the elevations he measured placed a larger part of the property within the Subdivision at or below BFE, not above BFE, as represented by Bonneau.

According to Cavell, the error in Bonneau's elevation data "goes a long way to explain why the subdivision routinely floods in ordinary rainfall."

After our *de novo* review of this matter, we find plaintiffs failed to establish a genuine issue of material fact as to any alleged fraud or conspiracy to defraud by the developer defendants. In particular, we find plaintiffs failed to present evidence to establish the existence of a genuine issue of material fact as to any alleged fraudulent misrepresentation by the developer defendants, or any specific intent on the part of the developer defendants to deceive plaintiffs. Plaintiffs concede that they have no personal knowledge that the developer defendants engaged in fraud or a conspiracy. As previously noted, Cavell, the licensed professional surveyor retained by plaintiffs, opined in his affidavit that Bonneau's miscalculation in his survey elevation data "goes a long way to explain why the subdivision routinely floods in ordinary rainfall." Plaintiffs failed to present proof that the developer defendants knew the Bonneau elevation surveys were inaccurate at the time plaintiffs purchased their homes, or that they knowingly provided plaintiffs with incorrect elevation surveys for their respective lots. In sum, plaintiffs failed to present any evidence to demonstrate that the developer defendants knew plaintiffs' driveways would flood, or that they suppressed this information from plaintiffs in an attempt to deceive them into purchasing homes in the Subdivision. As discussed, specific intent to deceive is a necessary element of fraud, and fraud cannot be based on mistake or negligence, regardless how great. **Lomont**, 172 So.3d at 634.

We further find the July 26, 2002 letter from Kornman to individuals comprising the Lake Ramsey Homeowners Association is insufficient to raise a genuine issue of material fact as to a conspiracy or fraudulent misrepresentation on the part of the developer defendants. As noted by Allen, the 1998 FEMA FIRM panel used at the time of development of the Subdivision showed that only a small

18

portion of the property was within Flood Zone "A." Plaintiffs failed to provide evidence showing Kornman knew any other portion of the property had been designated Flood Zone "A," or would fall within the qualifications of FEMA for designation as Flood Zone "A," at the time he wrote the letter. Thus, we find the July 26, 2002 letter insufficient to prove that Kornman knowingly made a misrepresentation as to the size of the area designated as Flood Zone "A." As noted, a defendant cannot fraudulently conceal his mistake if he has no knowledge of that mistake. See **Huffman**, 784 So.2d at 726. Moreover, plaintiffs failed to present evidence of Kornman's specific intent to obtain an unjust advantage or to cause damage or inconvenience to plaintiffs as relates to the July 26, 2002 letter, particularly since there is no evidence that the letter was sent to plaintiffs.

We also find the January 8, 2009 protest letter by Cooper to the St. Tammany Parish Floodplain Manager, which relied on the Bonneau defendants' elevation surveys, is insufficient to demonstrate a genuine issue of material fact as to plaintiffs' fraud or conspiracy claims against the developer defendants. Even considering the allegation in Allen's affidavit that some survey data was intentionally omitted by Cooper from the protest letter, plaintiffs fail to present evidence sufficient to raise a genuine issue of material fact regarding the developer defendants' intent to deceive plaintiffs in connection with the purchase of their homes based on the protest letter.[13] We likewise find the correspondence between Thibodeaux and Cooper, and Cooper and Kornman, as relates to Thibodeaux's recommendation for a hydrological study is insufficient to demonstrate a genuine issue of material fact showing the developer defendants conspired with the STPG defendants to commit a tortious act against plaintiffs. Even if some sort of

---

[13] By the time the FEMA protest letter was sent by Cooper to the St. Tammany Floodplain Manager, on January 8, 2009, all the remaining plaintiffs in this matter, except Casey, had already purchased their homes. Furthermore, Casey testified in her deposition that when she purchased her home in 2015 she was provided notice that her property was located in an area designated as "Flood Zone A-4."

19

agreement existed between the developer defendants and Thompson, as discussed, the actionable element of a conspiracy claim is not the conspiracy itself, but rather the underlying tort the conspirators agree to perpetrate and actually commit in whole or in part. **Ross**, 828 So.2d at 552. As noted, in order to recover under a theory of civil conspiracy, a plaintiff must establish that there was an agreement as to the intended result. **Butz**, 710 So.2d at 1174.

Furthermore, while not wholly dispositive of plaintiffs' fraud and conspiracy claims, we note that the trial court dismissed plaintiffs' fraud and conspiracy claims against the developer defendants' alleged co-conspirators, the Bonneau defendants and the STPG defendants, and this court affirmed the dismissals of those claims. See **Markiewicz**, 2020 WL 5587265, at *8, and **Markiewicz**, 328 So.3d at 499. Additionally, as discussed, this court also affirmed the trial court's summary judgment in favor of the STPG defendants for their discretionary actions in approving the Subdivision and issuing building permits. See **Markiewicz**, 328 So.3d at 498-499, and **Markiewicz**, 2022 WL 1235370, at *3.

## CONCLUSION

Based on the stated reasons, we find that the district court did not err in granting partial summary judgment in favor of Sun Construction, LLC, Penn Mill Lakes, LLC, and Lawrence A. Kornman and dismissing with prejudice plaintiffs' fraud and conspiracy claims against them. Accordingly, we affirm that portion of the trial court's March 30, 2021 judgment. Costs of this appeal are assessed against plaintiffs.

**AFFIRMED.**

**STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT**

**DOCKET NUMBER
2021 CA 1535**

**APRIL MARKIEWICZ, WIFE OF/AND MARK MARKIEWICZ**

**VERSUS**

**SUN CONSTRUCTION, L.L.C., PENN MILL LAKES, L.L.C., AND COOPER
ENGINEERING, INC., A PROFESSIONAL ENGINEERING CORPORATION**

**consolidated with**

**DOCKET NUMBER
2021 CA 1536**

**JANET SHEA, WIFE OF/AND ALPHONSE SHEA**

**VERSUS**

**SUN CONSTRUCTION, L.L.C.; SUNRISE CONSTRUCTION AND DEVELOPMENT,
L.L.C.; PENN MILL LAKES, L.L.C.; COOPER INGINEERING, INC., A
PROFESSIONAL ENGINEERING CORPORATION**

**consolidated with**

**DOCKET NUMBER
2021 CA 1537**

**PATRICIA GRANT, WIFE OF/AND RICHARD GRANT, ET AL., INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED**

**VERSUS**

**SUN CONSTRUCTION, L.L.C., PENN MILL LAKES, L.L.C., SUNRISE
CONSTRUCTION AND DEVELOPMENT, L.L.C., AND COOPER ENGINEERING,
INC., A PROFESSIONAL ENGINEERING CORPORATION**

**McDONALD, J., dissenting.**

I disagree with the majority opinion. The circumstantial evidence usually necessary for proof of motive or intent requires the trier of fact to choose from competing inferences, a task not appropriate for summary judgment. *Irving v. Katie Santo, Inc.*, 18-1619 (La. App. 1 Cir. 6/13/19), 2019 WL 2609035, *10.

In this case, I think the plaintiffs introduced sufficient circumstantial evidence to survive summary judgment. That is, plaintiffs' evidence creates a genuine issue of material fact as to the development defendants' fraudulent intent to circumvent the flood ordinances and Subdivision Ordinance 499 by using fill and false elevation data to remove

part of the Subdivision from Flood Zone A. Particularly, the following evidence infers such fraudulent intent: Leroy J. Cooper's April 24, 2003 email to Lawrence A. Kornman showing the developer defendants sought James "Red" Thompson's assistance in getting STPG to "back off" on detailed drainage studies recommended by Jean Thibodeaux; Mr. Kornman's July 26, 2002 letter to the Lake Ramsey HOA stating that only a minor portion of the Subdivision property was in Flood Zone A and such "may" be eliminated by elevations or fill; Mr. Cooper's January 8, 2009 protest letter to the St. Tammany Parish Flood Plain Manager requesting the proposed flood zone designation for the Subdivision be changed; and, Matthew L. Allen's affidavit opining that the "fraudulent" protest letter was an attempt to remove the floodplain identified in the DFIRM by "claiming that the entirety of the development was above BFE, despite the Final Drainage and Paving Plats showing otherwise."

Based on the above described evidence, I would reverse the trial court's summary judgment in favor of the development defendants on the plaintiffs' fraud claims and remand for further proceedings.